[No. B105358. Second Dist., Div. One. Dec. 18, 1996.]

CHERYL S., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND
FAMILY SERVICES, Real Party in Interest.

**COUNSEL**

Hans F. Berg for Petitioner.

No appearance for Respondent.

De Witt W. Clinton, County Counsel, Larry Cory, Assistant County Counsel, Auxiliary Legal Services, Lois Timnick, Jones, Day, Reavis & Pogue and Elwood Lui for Real Party in Interest.

**OPINION**

**VOGEL (Miriam A.), J.**—In *Cresse S.* v. *Superior Court* (1996) 50 Cal.App.4th 947 [58 Cal.Rptr.2d 56], Division Two of our Court gave notice to the bar that *meaningful* compliance with rule 39.1B of the California

Rules of Court[1] is mandatory, and that vague claims of reversible error unsupported by specific factual averments will henceforth result in orders dismissing rule 39.1B petitions. We publish this opinion to give notice that Division One agrees wholeheartedly with Division Two and that we too will henceforth dismiss inadequate rule 39.1B petitions.

## FACTS

Reports of general neglect brought Cheryl S. and her six children to the attention of the Department of Children and Family Services in 1992, at which time voluntary services were offered in an effort to keep the family together. The effort was for naught. Cheryl's two oldest children, Kevin P. and James P., now live with their father and his wife (and they are not parties to these proceedings). Cheryl's four younger children, David W. (now 13 years old), Paul W. (10), Juliana W. (7) and Samantha S. (5), were placed in shelter care in May 1994, because Cheryl (who was then living with three men on parole, in a house strewn with animal feces and dirty wet clothes) was not protecting her daughters from her boyfriend, an "extremely volatile" methamphetamine user who was sexually abusing the girls.[2]

Three days after the petition was filed (Welf. & Inst. Code, § 300),[3] one of the men who lived with Cheryl was found dead on her couch, apparently from a drug overdose. In October, an amended petition was sustained. In December, Cheryl married Keith N., another felon with a history of drug offenses. In March 1995, Cheryl was hospitalized following an attempted suicide. By May, David and Paul were exhibiting sexual predator behavior and they were placed in a residential treatment center.[4]

Since May 1994, DCFS has attempted to provide Cheryl with reunification services and monitored visits with her children, and to that end devised a case plan including sex and substance abuse counseling, parenting classes, and weekly monitored visits with the children. Cheryl failed to participate in any of these programs or in other family maintenance and family reunification services ordered by the court. When it became apparent that Cheryl was unable to cope, DCFS recommended that she obtain individual therapy from

[1] All rule references are to the California Rules of Court.

[2] Cheryl has a history of mental illness and drug abuse, and she was essentially unable to care for her children, leaving them to play outside in their underwear in inclement weather or simply sending them to live with unrelated friends.

[3] All section references are to the Welfare and Institutions Code.

[4] David, Paul and Juliana had been living in Oregon with their father, David W., but were removed from his home after he was charged with contributing to the delinquency of an unrelated 15-year-old girl, sexually abusing his own children, and leaving them without supervision. David W.'s whereabouts are unknown, as are the whereabouts of Samantha's father, Robert R., and neither father is a party to these writ proceedings.

a licensed professional, participate in a women's support group, and attend a drug diversion program, and these services were made available to her, without success.[5] As recently as one month before the then-scheduled hearing to determine whether reunification services should be terminated, Cheryl (who had missed two-thirds of her court-ordered drug tests) tested positive for marijuana.

Following a section 366.22 hearing held in September 1996, the court found that the "return of the minors would create [a] substantial risk of detriment to their physical and emotional well-being" because Cheryl is unable to manage even the "simplest things like living arrangements" and because she must "be medicated on a 24 hour per day basis with such drugs as Lithium, [Paxil, Atarax and Klonopin] making it extremely difficult for her to exercise appropriate parenting skills." Based on these and other findings, reunification services were terminated, and a contested section 366.26 hearing was set for January 1997, to determine whether the children should be placed for adoption or in long-term foster care.

In October, Cheryl filed a rule 39.1B petition containing one paragraph of generalized allegations, without any facts or record references.[6] In a preliminary response to Cheryl's petition, DCFS asked us to treat the pro forma petition as an abandonment of Cheryl's request for review, and to dismiss the petition without reaching the merits of her claim. We ordered Cheryl's court-appointed lawyer (Hans F. Berg) to respond, which he did, suggesting the burden ought to be placed on DCFS to defend the ruling it obtained in the trial court or on the court, not on the person attacking that ruling. A few days later, Mr. Berg filed an amended petition, which DCFS answered.

---

[5]Cheryl appeared regularly to obtain her psychotropic medications, attended a few women's support group meetings, and did visit her children with some consistency. But she did not obtain any individual therapy, did not attend a drug diversion program, did not complete the court-ordered parenting classes, and offered weak excuses for her lack of involvement—she overslept, lost telephone numbers, could not find any drug classes, and so on. When asked if she would change her attitude if the court gave her more time, Cheryl answered: "Try real hard. Getting a lot cooler. Easier to be outside. Not going to make me so sick because I'm supposed to be—with the medicine I take, I'm supposed to stay out of the sun."

[6]This is what the petition said: "The hearing revealed minors' mother to be free of drugs, living in an appropriate setting for the childrens' [sic] safety and general welfare, and the mother to be involved with court-ordered reunification services. The Department's assigned caseworkers did not offer adequate services or visitation to the mother and have thwarted her reunification efforts. The mother demonstrated her capacity to care for the minors without substantial risk of detriment to them if returned on September 6, 1996." At least two other rule 39.1B petitions filed by the same lawyer are identical (except for the date), including the punctuation error. (*Sharae W.* v. *Superior Court* (B104645); *James M.* v. *Superior Court* (B105374).)

## DISCUSSION

■ First, we reject Cheryl's contentions that DCFS failed to provide adequate reunification services and that the evidence does not support the finding of detriment to the children. For more than two years, Cheryl has failed to take advantage of the wide variety of services made available to her, and there is nothing in the record to suggest that more time or different services would result in reunification. (§ 361.5, subd. (a).) Cheryl's psychiatrist testified that she would have difficulty caring for her children, and that there existed a continuing "possibility of decompensation" if Cheryl failed to follow her around-the-clock medication regimen. In any event, her inability to participate in the programs designed to improve her parenting skills demonstrates her inability to provide the care her children need and deserve. However important Cheryl's rights may be, the rights of her children are equally compelling and they must prevail where the parent has, over a substantial period of time, failed to correct the pattern of neglect that led to the removal of her children from her custody. (*In re Baby Boy L.* (1994) 24 Cal.App.4th 596, 609 [29 Cal.Rptr.2d 654]; *In re Sade C.* (1996) 13 Cal.4th 952, 988-989 [55 Cal.Rptr.2d 771, 920 P.2d 716]; *In re Jasmon O.* (1994) 8 Cal.4th 398, 419 [33 Cal.Rptr.2d 85, 878 P.2d 1297].)

■ Second, we summarily reject the notion that DCFS has an obligation to do the petitioner's work.[7] As explained in *Cresse S.,* our duty to closely review a rule 39.1B petition and its supporting record for reversible error does not relieve the petitioner's attorney from his obligation to present an adequate record, argument, and points and authorities. (*Cresse S.* v. *Superior Court, supra,* 50 Cal.App.4th at p. 952.) The fact that the attorney is appointed by the court and paid a flat fee is, of course, irrelevant —if he deems the fee inadequate, he need not accept the appointment. (*Id.* at pp. 952-953; see also *Amarawansa* v. *Superior Court* (1996) 49 Cal.App.4th 1251 [57 Cal.Rptr.2d 249].) Accordingly, for the reasons more fully explained in *Cresse S., we shall in the future dismiss as inadequate any rule 39.1B petition that does not (1) summarize the particular factual bases supporting the petition, (2) refer to specific portions of the record, (3) relate the facts to the grounds alleged as error, (4) note disputed aspects of the record, and (5) have attached to it a particularized memorandum of points and authorities.* (Rule 39.1B(j).)

---

[7]Rule 39.1B(i) provides that petitions for extraordinary writs are to be "liberally construed in favor of their sufficiency," and that the "processing of the petition for writ [review] shall not be delayed or impeded due to technical defects or omissions." As pertinent, subdivision (j) of rule 39.1B provides: "The petition for extraordinary writ shall summarize the factual basis for the petition. Petitioner need not repeat facts as they appear in any attached or submitted record, provided, however, that references to specific portions of the record, their significance to the grounds alleged, and disputed aspects of the record will assist the reviewing court and shall be noted. Petitioner shall attach applicable points and authorities."

## DISPOSITION

The petition is denied.

Ortega, Acting P. J., and Masterson, J., concurred.