[No. A089244. First Dist., Div. Two. Feb. 24, 2000.]

GLEN C., Petitioner, v.
THE SUPERIOR COURT OF ALAMEDA COUNTY, Respondent;
ALAMEDA COUNTY SOCIAL SERVICES AGENCY, Real Party in
Interest.

572

---

**COUNSEL**

Elaine J. Harrison for Petitioner.

No appearance for Respondent.

Richard C. Winnie, County Counsel, and Anthony E. Scarr, Deputy County Counsel, for Real Party in Interest.

## OPINION

**KLINE, P. J.**—Petitioner Glen C., the father of G. C., B. H. and G. H., seeks review by extraordinary writ of orders of the juvenile court terminating reunification services and setting a permanency planning hearing (Welf. & Inst. Code,[1] § 366.26) for February 28, 2000.[2] Although his bare-bones petition, unaccompanied by points and authorities, does not elaborate on his argument, he contends he was given insufficient reunification services, he was not given visitation, and he attended the parenting classes offered at the prison where he was incarcerated and otherwise attempted to do all he could to "prepare to be a father to his children." We deny the petition.

### STATEMENT OF THE CASE AND FACTS

G. C., B. H. and G. H., were born in September 1995, January 1998, and November 1998, respectively. On December 10, 1998, the Alameda County Social Services Agency (the Agency) filed a petition under section 300 concerning petitioner's children and their three older half siblings, then aged nine years, five years and four years. The children had been living with the mother, except for G. H., who had been hospitalized since his birth. The petition alleged that the mother had a substance abuse problem which rendered her unable to provide adequate care and supervision to the children in that G. H. had been born premature, positive for cocaine and with medical problems and the minors had been found alone in a filthy house. (§ 300, subd. (b).) The petition further alleged that the children had been left without provision for support in that petitioner was incarcerated and could not arrange for the children's care. (§ 300, subd. (g).)[3] Petitioner was listed on the petition as an alleged father, in custody at Vacaville. The children were

---

[1] All further statutory references will be to the Welfare and Institutions Code unless otherwise specified.

[2] The petition erroneously designates the challenged order as that of September 27, 1999. The order of September 27, 1999, however, merely continued the matter. The order terminating reunification services and setting the permanency planning hearing followed a hearing on October 25, 1999. Petitioner's notice of intent to file writ petition correctly referenced the October 25 date and attached the order of that date. The Alameda County Social Services Agency's opposition to the petition refers to October 25 as the date the relevant orders were made.

[3] As the course of the proceedings as to the three half siblings is not at issue on this appeal, the allegations concerning the fathers of those children are irrelevant.

detained the same day. G. H. was placed in foster care; G. C. and B. H. were placed with their maternal great-grandmother.

The jurisdictional hearing was held on December 29, 1998. The mother submitted to the allegations and waived her right to trial and the allegations of the petition were found true. The report prepared for this hearing indicated that petitioner was in custody at the Santa Rita jail and had a criminal record dating to 1991. The Agency recommended that the children remain in their out-of-home placements. As to petitioner, the report stated that the Agency was not required to provide reunification services unless and until petitioner established himself to be the presumed father. On December 30, an amended petition was filed and it listed petitioner as a presumed father.

At the dispositional hearing on January 19, 1999, the court adopted the findings and orders in the jurisdictional report. As indicated above, these orders did not include a reunification plan for petitioner.

On February 9, 1999, a supplemental petition (§ 387) was filed concerning G. C., B. H., and the half sister who had been in the same placement, alleging that the maternal great-grandmother could not provide care and a home for the children due to ill health. At the detention hearing on February 10 and 11, the children were removed from the great-grandmother's custody. According to the detention hearing report, the mother had stated that she had been in recent communication with petitioner, who was no longer incarcerated. This report again listed petitioner as an alleged father.

The jurisdictional/dispositional report filed on February 26, 1999, stated that petitioner, the "alleged" father of G. C. and B. H., was expected to agree with the Agency's recommendation that the children be placed in a foster home. According to this report, petitioner had been interviewed and it appeared no family members were available to care for the children. Petitioner was advised he could visit the children on February 19 but was incarcerated on that date, having been arrested on a drug charge, and continued to be incarcerated at the Santa Rita jail as of February 25. In one portion of the report, it was stated that petitioner would testify that prior to his incarcerations he had been gainfully employed and living with his sister, he had graduated from high school, he had a relationship with the children and he intended to reunify with them. In another portion, it was reported that petitioner had not gotten to see G. H. until "later in that child's life" and, because of his recent five-month incarceration, had not established a relationship with B. H. The Agency again recommended the court order that

reunification services for petitioner would not be required unless and until he established himself as a presumed father. The case plan update, however, listed standard service objectives for petitioner (including, for example, appropriately parenting the child, maintaining a stable residence for himself and the children, and being nurturing and supportive during visits) as well as the specific responsibilities/activities of "parenting classes," outpatient substance abuse counseling and maintaining conditions of probation/parole, including drug testing.

At the hearing on March 2, the mother submitted to the allegations and the children were ordered into foster care. The court's minute order stated: "30 days to set aside on father. No reunification to Glen[] [C.] Jr. alleged father unless & until he establishes himself as a presumed father of [G. C.] & [B. H.]."

The Agency filed an interim review report on April 20, 1999, which stated that petitioner had met with the social worker on February 9 and expressed interest in reunifying with the children. The father was then arrested on February 19, on his way to visit G. H., and remained in custody at the Santa Rita jail. The social worker wrote to petitioner on April 8, inquiring whether he wanted to proceed with reunification services and enclosing self-addressed stamped envelopes and stationery to enable him to write to his children, his attorney, or the social worker. The social worker wrote to petitioner again on April 14 to inform him of a parenting class (T.A.L.K.) and a substance abuse program (D.E.U.C.E.) available at the jail. The interim report, in a section listing individuals to whom notice of the hearing had been given, listed petitioner as a "presumed father," with an address in Oakland. At the April 23 hearing, the court continued existing orders in effect and continued the matter for the six-month hearing on July 15. The minute order made no reference to reunification services.

The Agency's report for the July 15 hearing recommended that reunification services be terminated and the matter set for a permanency planning hearing. The report referred to petitioner as an alleged father, but noted that petitioner had "maintained contact with the minors and [held] the minors out to the community as his own." Petitioner, who remained in custody at the Santa Rita jail, was still "very interested in reunifying," was attending the T.A.L.K. program, had been informed of the time limitations for reunification, and had stated by letter that he was aware he might not be able to complete the requirements for reunification before expiration of the time limit. The report stated that, on March 2, the court had ordered petitioner to "cooperate with" the case plan described above. Other than attending the

T.A.L.K. program, petitioner was reported to be unable to comply with the case plan due to his incarceration. With respect to reasonable efforts, the social worker reported that petitioner had been sent the "Incarcerated Parents Manual," pictures of the children and self-addressed, stamped envelopes and paper to write to them, and that the social worker had kept petitioner informed by letter as to how the children were doing in foster care. Petitioner had had no visitation with the children.

The six-month hearing was held on August 9, 1999. Asked why he had not been reunified with his children, petitioner testified: "Basically, just stupidity, I guess. Just not putting my head on straight when I'm in society . . . ." Petitioner testified that the social worker was "real considerate" and kept him informed about the children, that he wrote back to her, that he sent the children pictures and drawings and told them he loved them, and that he thought about the children all the time. He had graduated from the T.A.L.K. program with perfect attendance but continued to go to the classes because he felt they were good for him and were preparing him to parent his children. He had not yet been able to get into the D.E.U.C.E. program. His "ballpark" idea of when he would be released from custody was "this time next year." He testified that he had always managed to get a job, that he planned to have a "solid household," and that he was going to "try [his] hardest to find a home" for the children.

County counsel acknowledged at the hearing that although petitioner was listed as an alleged father, based on his testimony at the hearing he "may be presumed" and agreed with the court's assessment of petitioner as having "adopted" the children in the sense of helping them out. When the court observed that reunification services had not been ordered for petitioner, county counsel referred to the statement in the July 15 report that petitioner had been ordered on March 2 to cooperate with the case plan. The court noted that counting from March 2, petitioner had not had a full six months of services. Petitioner's attorney noted that petitioner had had no opportunity for visitation since February. The hearing was continued to allow petitioner a full six months of reunification services.

On October 25, 1999, the court terminated reunification services, finding by clear and convincing evidence that neither parent had regularly participated in any court-ordered treatment plan and noting that all three children had been under the age of three years at the time of detention. A section 366.26 hearing was set for February 28, 2000.

The present petition was filed on December 20, 1999. Pursuant to rule 39.1B of the California Rules of Court,[4] we issued an order to show cause and put the case on calendar for oral argument. Although the parties waived oral argument, due to the inadequacy of the petition and briefing—no points and authorities filed by petitioner and a four-page brief filed by the Agency—we ordered the parties to file letter briefs responding to specific questions posed by the court and to appear for oral argument. As we will explain in part I below, we decline the Agency's request that we dismiss the petition as procedurally inadequate (cf. *Cheryl S. v. Superior Court* (1996) 51 Cal.App.4th 1000 [59 Cal.Rptr.2d 520]; *Cresse S. v. Superior Court* (1996) 50 Cal.App.4th 947 [58 Cal.Rptr.2d 56]) and proceed to the merits. Before doing so, however, we will discuss the subject of "bare-bones" rule 39.1B petitions and how they will be handled by this court in the future.

I.

The procedural requirements for a petition for extraordinary writ challenging a trial court's decision to terminate reunification services and set a permanency planning hearing are set forth in rule 39.1B(j): "The petition for extraordinary writ shall summarize the factual basis for the petition. Petitioner need not repeat facts as they appear in any attached or submitted record, provided, however, that references to specific portions of the record, their significance to the grounds alleged, and disputed aspects of the record will assist the reviewing court and shall be noted. Petitioner shall attach applicable points and authorities. . . ."

Inadequacies in a rule 39.1B petition may affect not only the resolution of the petition itself but also the parent's right to appeal from the order following the section 366.26 hearing. Section 366.26, subdivision (*l*), provides: "(1) An order by the court that a hearing pursuant to this section be held is not appealable at any time unless all of the following applies: [¶] (A) A petition for extraordinary writ review was filed in a timely manner. [¶] (B) The petition substantively addressed the specific issues to be challenged and supported that challenge by an adequate record. [¶] (C) The petition for extraordinary writ review was summarily denied or otherwise not decided on the merits. [¶] (2) Failure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section." Rule 39.1B(d) similarly provides that "[t]he findings and orders of the juvenile court in setting a hearing" under section

---

[4]All further references to rules will be to the California Rules of Court unless otherwise specified.

366.26 may be reviewed on appeal only if (1) a timely writ petition was filed, and (2) the petition was "summarily denied or otherwise not decided on the merits." Additionally, this subdivision of the rule states that "[r]eview on appeal of the order setting a hearing under section 366.26 is limited to issues raised in a previous petition for extraordinary writ that were supported by an adequate record."

The petition in the present case does not comply with the requirements of rule 39.1B(j). Indeed, the petition is about as minimal as it could be, stating on its face that petitioner "attended the [T.A.L.K.] program but had no child visitation" and that petitioner had "perfect attendance" at that program and was "attempting to do everything he could to prepare to be a father to his children." No other summary of the "factual basis for the petition" or points and authorities (rule 39.1B(j)) were submitted. The Agency's opposition, three and a half pages in length, suggests that we dismiss the petition due to the absence of points and authorities (*ibid.*), urges that petitioner was not actually offered reunification services and that the propriety of the dispositional order denying such services is not presently before this court; and maintains, without any supporting argument, that reasonable services were offered or provided.

Bare-bones petitions such as the one in this case present the reviewing court with several options, each problematic for different reasons. Some courts have taken the view that a procedurally inadequate petition—one that does not comply with the requirements of rule 39.1B(j)—should be dismissed or summarily denied. (*Anthony D. v. Superior Court* (1998) 63 Cal.App.4th 149, 157 [73 Cal.Rptr.2d 479] [approving summary denial of petition that listed complaints but was filed before record and did not contain specific legal or factual support]; *Nahid H. v. Superior Court* (1997) 53 Cal.App.4th 1051, 1056 [62 Cal.Rptr.2d 281] [recognizing discretion to summarily dismiss a "meager" petition unaccompanied by points and authorities but choosing to entertain merits because of risk of "grave injustice" on facts]; *Cheryl S. v. Superior Court, supra,* 51 Cal.App.4th at p. 1005 [announcing intention to dismiss as inadequate any rule 39.1B petition that does not "summarize the particular factual bases supporting the petition," "refer to specific portions of the record," "relate the facts to the grounds alleged as error," "note disputed aspects of the record," and "have attached to it a particularized memorandum of points and authorities"]; *Cresse S. v. Superior Court, supra,* 50 Cal.App.4th at p. 956 [announcing intention to dismiss inadequate petitions "unless good cause is shown and a conforming petition supplants the defective one"]; *Joyce G. v. Superior Court* (1995) 38 Cal.App.4th 1501, 1512 [45 Cal.Rptr.2d 805] [deeming untimely filing of a petition, failure to "tender and 'substantively' to address a specific material

issue or issues," and failure to provide an adequate record to be " 'exceptional circumstances' within the meaning of rule 39.1B(m) which excuse the court from reviewing and determining a petition on the merits"].)[5] Some courts have further opted for summary denial on the merits of petitions that are procedurally adequate but fail to present meaningful argument, if the reviewing court does not find that the issue raised by the petition is arguable. (*Joyce G. v. Superior Court, supra,* 38 Cal.App.4th at pp. 1513-1514, 1518.)[6] Another alternative open to a reviewing court is to require or offer the option to counsel to correct deficient petitions by filing amended petitions. Finally, a reviewing court might overlook the deficiencies in a petition and independently review the record for possible errors by the trial court.

■ The last option mentioned is neither practical nor desirable. Independent review along the lines of *Anders v. California* (1967) 386 U.S. 738 [87 S.Ct. 1396, 18 L.Ed.2d 493] and *People v. Wende* (1979) 25 Cal.3d 436 [158 Cal.Rptr. 839, 600 P.2d 1071] would impose an extraordinary burden on the courts (see *Joyce G. v. Superior Court, supra,* 38 Cal.App.4th at p. 1512) and is not required by either constitutional principle or policy for appeals from orders adversely affecting child custody or parental status (*In re Sade C.* (1996) 13 Cal.4th 952 [55 Cal.Rptr.2d 771, 920 P.2d 716]). *Sade C.* determined that *Anders* review, which is prophylactic in nature, is constitutionally required only for a criminal defendant represented by appointed counsel on his or her first appeal of right. (*Sade C., supra,* at pp. 977-979, 986-992.) Weighing the factors identified in *Lassiter v. Department of Social Services* (1981) 452 U.S. 18, 27 [101 S.Ct. 2153, 2159, 68 L.Ed.2d 640], in the context of dependency appeals—and stressing the presumptive accuracy and justness of the decision appealed from—the court found the private interests of the parent and child "fundamental" and "compelling," but presumptively inconsistent; the interest of the state in the child's welfare and in accurate and just resolution of the parent's appeal "compelling" and "important," and its interest in reducing the cost and burden of the proceedings "legitimate"; and the risk of error from absence of *Anders* review "negligible." (*Sade C., supra,* at pp. 987-990.) On the last point, the court stated that its own

---

[5]Depending on the particular inadequacy of the petition, summary denial might also mean preclusion of a subsequent appeal from the decision rendered at the section 366.26 hearing. While rule 39.1B(d) would allow subsequent review of the order setting the section 366.26 hearing if a petition for extraordinary writ was timely filed and summarily denied, section 366.26, subdivision (*l*)(2), states that "[f]ailure to file a petition for extraordinary writ review within the period specified by rule, to substantively address the specific issues challenged, or to support that challenge by an adequate record shall preclude subsequent review by appeal of the findings and orders made pursuant to this section."

[6]*Joyce G.* recognized that *summary* denial on the merits would allow a subsequent appeal (§ 366.26, subd. (*l*)(1)(C), but noted that such appeal would be "limited to the same issue on the same record (§ 366.26, subd. (*l*)(1)(B)) and thus is destined on appeal to receive the same result." (*Joyce G. v. Superior Court, supra,* 38 Cal.App.4th at p. 1514.)

experience showed "appointed appellate counsel faithfully conduct themselves as active advocates in behalf of indigent parents," and noted the conclusion of the Court of Appeal in *In re Angelica V.* (1995) 39 Cal.App.4th 1007 [46 Cal.Rptr.2d 295] that *Wende* review was "unproductive" as more than a decade of such review had yielded " 'no unbriefed issues warranting further attention.' " (*Sade C., supra,* at p. 990, italics omitted.) *Sade C.* concluded that "[p]rocedures that are practically 'unproductive,' like those in question, need not be put into place, no matter how many and how weighty the interests that theoretically support their use." (*Id.* at pp. 990-991.) The *Sade C.* court then declined to extend *Anders* procedures to indigent parents' appeals from decisions adversely affecting child custody and parental status, finding that "[w]hatever the benefits in ensuring that appointed appellate counsel conduct themselves as active advocates—they appear to be relatively small—the costs are greater." (*Sade C., supra,* at pp. 992-993.) These costs were identified as time, money, delay in finality and, especially, the harm to the child in facing the threat of loss of a stable home. (*Id.* at p. 993.)

For the most part, the rationale of *In re Sade C.* applies to rule 39.1B writ proceedings. Certainly parents in these proceedings have no constitutional right to *Anders/Wende* review. The interests of the parent, child and state are similar to those implicated in dependency appeals with, if anything, an even stronger interest in expeditious resolution. The trial court orders being challenged are presumptively correct. While the problem of bare-bones petitions itself raises a question as to the magnitude of the risk of error in the absence of independent review by the court, it nevertheless remains our observation that *most* rule 39.1B petitions *are* adequately presented. The interests of all would be better served by seeking to prevent the filing of inadequate petitions than by responding to such petitions with independent review by the court.

■ At the other end of the spectrum, summary denial or dismissal of a procedurally inadequate petition punishes the parent for the failure of counsel to adequately perform his or her professional responsibilities. The interest at stake in rule 39.1B petitions is of extreme importance, as the termination of reunification services in most instances ensures the subsequent termination of parental rights at the section 366.26 hearing. " ' "[T]he critical decision regarding parental rights will be made at the dispositional or review hearing, that is, that the minor cannot be returned home and that reunification efforts should not be pursued. In such cases, the decision to terminate parental rights [at the section 366.26 hearing] will be relatively automatic if the minor is going to be adopted." ' . . . [¶] '. . . [I]n order to terminate parental rights [at the section 366.26 hearing], the court need only make two

findings: (1) that there is clear and convincing evidence that the minor will be adopted; and (2) that there has been a previous determination that reunification services shall be terminated.' . . . Hence, the proceeding terminating reunification services and setting a section 366.26 hearing is generally a party's last opportunity to litigate the issue of parental fitness as it relates to any subsequent termination of parental rights, or to seek the child's return to parental custody." (*In re Matthew C.* (1993) 6 Cal.4th 386, 392 [24 Cal.Rptr.2d 765, 862 P.2d 765], quoting *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249-250 [19 Cal.Rptr.2d 698, 851 P.2d 1307].) A parent whose rule 39.1B petition is summarily denied due to procedural inadequacies is likely left without even the possibility of a claim of ineffective assistance of counsel. (*In re Janee J.* (1999) 74 Cal.App.4th 198 [87 Cal.Rptr.2d 634] [rule precluding review of prior orders as to which time for appeal or writ review has passed applies to claims of ineffective assistance of counsel]; *In re Meranda P.* (1997) 56 Cal.App.4th 1143 [65 Cal.Rptr.2d 913] [same].)

Moreover, the Legislature, in enacting section 366.26, sought to achieve substantive as well as expeditious review of the trial court's orders in these cases. Thus, section 366.26, subdivision (*l*)(4), states that the intent of the subdivision is to "[m]ake every reasonable attempt to achieve a substantive and meritorious review by the appellate court within the time specified in Sections 366.21 and 366.22 for holding a hearing pursuant to this section" and to "[e]ncourage the appellate court to determine all writ petitions filed pursuant to this subdivision on their merits." Rule 39.1B(a) reiterates these purposes, while other subdivisions of the rule direct that petitions be "liberally construed in favor of their sufficiency" (rule 39.1B(i)) and that "[a]bsent exceptional circumstances the appellate court shall review the petition for extraordinary writ and decide it on the merits by written opinion" (rule 39.1B(o)).

Neither section 366.26 nor rule 39.1B, however, *requires* that all petitions be decided on their merits. On the contrary, both expressly recognize the possibility of summary denial in their provision that the trial court's orders in setting the section 366.26 hearing may be reviewed on appeal after that hearing only if, among other things, the "petition for extraordinary writ review was summarily denied or otherwise not decided on the merits." (§ 366.26, subd. (*l*)(1)(C); rule 39.1B(d)(2).) "[T]he 'encourage[ment]' to the appellate courts to determine petitions 'on the merits' is aspirational, not a mandate for the creation of a cause in all rule 39.1B proceedings. [¶] . . . [¶] By 'encourag[ing]' Courts of Appeal 'to determine all [rule 39.1B] writ petitions . . . on the merits,' the Legislature meant nothing more than that the appellate courts should avoid exercising their discretion summarily to deny such petitions for technical reasons of procedure. In *Steve J. v. Superior*

*Court*, it is stated that '. . . the goal of section 366.26, subdivision (*l*) . . . is for the reviewing courts to avoid the use of discretionary grounds to deny relief, assuming specific conditions precedent are met . . . .' (*Steve J.* v. *Superior Court* (1995) 35 Cal.App.4th 798, 807 [41 Cal.Rptr.2d 731].) The *Steve J.* court identified the 'specific considerations precedent' as the timely filing of a writ petition which substantively addresses the specific issues to be challenged and is supported by an adequate record. (35 Cal.App.4th at p. 807.) Thus at least to the extent these conditions precedent are not satisfied, the 'goal' of section 366.26 is not to be confounded with a mandate." (*Joyce G. v. Superior Court, supra*, 38 Cal.App.4th at pp. 1511-1512.) As stated in *Anthony D. v. Superior Court, supra*, 63 Cal.App.4th at page 157, "we are not required to do the petitioner's work and expend judicial resources on a petition which does not meet the threshold requirements of the statute and rule."

*Cresse S. v. Superior Court, supra*, 50 Cal.App.4th at page 956, suggested some of the explanations for what it referred to as an "alarming number" of inadequate petitions, with "little, if any, merit" being filed in that court. "The first is that counsel in dependency cases are generally paid on a flat fee basis. Under this flat fee arrangement, the attorney not only performs services in connection with the dependency proceedings, but may be obligated to file a petition for writ of mandate permitted by [rule] 39.1B. Perhaps the compensation arrangement presents too little incentive to these attorneys to perform their appellate responsibilities adequately. Second, we believe that the issue of the adequacy of reunification services is often raised by writ petition following the permanency planning hearing, whether or not the issue has any merit, because the issue may not be raised in a subsequent appeal." (*Ibid.*) *Cresse S.* reminded counsel that they are not required to file a petition which has no merit. On the other hand, "when the case has any merit, the attorney is required—regardless of the compensation arrangement—to prepare a petition sufficient under the California Rules of Court and *Sade C.*" (*Ibid.*)

In our view, counsel in dependency cases simply cannot be relieved of their obligations to fully represent their clients, as they would be if the filing of inadequate rule 39.1B petitions were to result in this court engaging in an *Anders/Wende*-type review. Rather, it is incumbent upon counsel who participate in dependency cases to advocate their clients' positions fully and effectively. This does not mean that counsel should file a rule 39.1B petition in every case, or in every case in which the client has filed a notice of intent to file such a petition. To the contrary, an attorney is required to maintain only such actions or proceedings "as appear to him or her legal or just." (Bus. & Prof. Code, § 6068, subd. (c); see Rules Prof. Conduct, rule 3-200.)

When a rule 39.1B petition is filed, however, it is the obligation of the attorney to comply with section 366.26, rule 39.1B and case law describing the requirements for an adequate petition. Accordingly, the petition must be timely filed (rule 39.1B(k)); be accompanied by an adequate record (rule 39.1B(n)); "summarize the factual basis for the petition," provide "references to specific portions of the record, their significance to the grounds alleged, and disputed aspects of the record," and attach points and authorities (rule 39.1B(j)). While we fully recognize the constraints imposed by the short time frames set forth in the statute and rule for these petitions, the points and authorities must, at a minimum, adequately inform the court of the issues presented, point out the factual support for them in the record, and offer argument and authorities that will assist the court in resolving the contested issues.

In the present case, confronted with an utterly deficient petition, this court attempted to remedy the situation by ordering counsel to submit additional briefs addressing specific questions posed by the court after review of the record. We took this course in deference to the rights of the father, whose interests were not advanced by his attorney's presentation of an inadequate petition. Unlike some rule 39.1B cases, the time between filing of the petition and the date set for the section 366.26 hearing in the present case was sufficiently long that we could entertain additional briefing without compromising expeditious review of the case. ■ Such expeditious review is not only statutorily required, but critical to the child's interest in finality of the trial court's orders and stability of placement: Once reunification services are terminated, the focus of the proceeding shifts from the parent's interests in reunification to the child's needs for permanency and stability. (*In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].)

Unfortunately, the response we received from petitioner's counsel did nothing to illuminate the issues. At oral argument, which was held upon this court's order after having been waived by the parties, counsel for petitioner acknowledged that the record to which this court's review was limited did not support her client's claim for relief. Counsel for petitioner went so far as to inform this court that the case had no merit, stating that if her client had asked, she would have advised against filing the petition.

Although petitioner himself filed the notice of intent to file a petition for extraordinary writ, counsel was not required to follow through with the petition itself if she believed the petition had no arguable merit. In light of the obligation imposed upon attorneys by Business and Professions Code section 6068, subdivision (c), not to maintain actions that do not appear

"legal or just," the filing of a rule 39.1B petition by counsel informs this court that counsel believes the issues presented *are* "legal or just." A petition that the attorney did not believe to be "legal or just" would violate the attorney's professional obligation and would be frivolous.

The presentation of this case has convinced us that strong measures are necessary to assure parents in dependency cases receive proper representation in rule 39.1B writ proceedings. As has been stated, when an attorney evaluates a case and determines there is no potentially meritorious issue to be raised, a petition for extraordinary writ simply should not be filed. (*Cresse S. v. Superior Court, supra,* 50 Cal.App.4th at p. 956.) In order to impress upon counsel the importance of adequate presentation of writ petitions that are filed, we herewith announce our general intention to, in the future, summarily deny petitions that fail to comply with the requirements of section 366.26 and rule 39.1B as well as to take appropriate steps (e.g., report the conduct to the trial court or State Bar or initiate sanction proceedings, if appropriate) to deter repeated violations.

## II.

█ Petitioner's claim that he received inadequate reunification services depends on an initial assumption that he was entitled to receive reunification services. With the exception of one report, petitioner was consistently referred to in the trial court as an alleged father. Only a presumed father, however, is entitled to reunification services. (§ 361.5, subd. (a); *In re Zacharia D.* (1993) 6 Cal.4th 435, 451 [24 Cal.Rptr.2d 751, 862 P.2d 751].) A man who has not married the children's mother, as petitioner has not, may be a presumed father if he "receives the child into his home and openly holds out the child as his natural child." (Fam. Code, § 7611, subd. (d).)

The record before us reflects no express finding that appellant was a presumed father. The order resulting from the March 2 jurisdictional/dispositional hearing stated: "30 days to set aside on father. No reunification to Glen[] [C.] Jr. alleged father unless & until he establishes himself as a presumed father of [G. C.] & [B. H.]." At the August 9, 1999, hearing, the court inquired whether appellant had been determined to be the presumed father of any of the children; counsel for the Agency noted that he was listed as an alleged father but "based upon his testimony today, it seems as though he may be presumed." The judge explained that he had thought the issue might have already been resolved as to the oldest child and stated that it "seems, based on his testimony, he has adopted in the sense of helping out these children." Counsel for the Agency replied, "Sure." The court went on to continue the hearing to allow appellant to receive a full six months of

reunification services. Since petitioner could only have been entitled to reunification services as a presumed father (§ 361.5, subd. (a); *In re Zacharia D., supra*, 6 Cal.4th at p. 451), this order implies a finding that appellant was the children's presumed father.

The record, however, offers no support for such a finding. There is no question petitioner held the children out as his own. To meet the statutory requirement of receiving the child into the home, however, the child must physically be brought into the father's home; constructive receipt is not sufficient. (*Adoption of Michael H.* (1995) 10 Cal.4th 1043, 1050 [43 Cal.Rptr.2d 445, 898 P.2d 891, 61 A.L.R.5th 769]; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816 [4 Cal.Rptr.2d 615, 823 P.2d 1216].) In the present case, there is no evidence that petitioner ever received the children into his home or that he was thwarted in so doing by the mother. (Cf. *Adoption of Kelsey S, supra*, 1 Cal.4th at p. 849 [where father comes forward early, demonstrates full commitment to child, "emotional, financial and otherwise," but is thwarted from further assuming parental role, federal Constitution prohibits termination of parental rights without showing of unfitness].) With respect to the youngest child, G. H., petitioner was incarcerated at the time of the child's birth, and the child went directly from the hospital into foster care. The oldest child, G. C., was born in September 1995; B. H. was born in January 1998. According to the Agency's reports, appellant was convicted of transporting/selling a controlled substance on November 6, 1995, two months after G. C.'s birth, and sentenced to three years in prison. The record does not indicate a release date, but appellant was returned to custody for violation of parole on September 14, 1998, eight months after B. H.'s birth, after being arrested for battery on August 13, 1998. These dates indicate that appellant was free from custody for some undefined period of time after the births of the two older children. There is nothing in the record, however, to suggest appellant ever resided with the children. To the contrary, while the children were living with their mother before they were detained in December 1998, petitioner reported to the Agency that he had never had his own place of abode, he "did not get to see [G. C.] until later in that child's life" and "since he has been recently incarcerated for five months, has not established a relationship with [B. H.]." Petitioner's statements to the Agency strongly suggest he never "receive[d] the child[ren] into his home." (Fam. Code, § 7611, subd. (d).) Counsel for petitioner offers no evidence to the contrary, stating in response to this court's question only that "because of the age of the eldest child, it is highly likely that [petitioner] and the mother lived together for a significant period of time." Counsel's statement that "the . . . Agency made no attempt to determine, for the record, that father lived with the children," misconceives the issue: It is the father's burden to prove he is a presumed father by a preponderance of the

evidence. (*In re Spencer W.* (1996) 48 Cal.App.4th 1647, 1652 [56 Cal.Rptr.2d 524].)

We recognize that petitioner has claimed his paternal interest in the children, maintained contact with them at least during his most recent incarceration and apparently worked diligently on developing his parenting skills through the parenting program he attended. His own statements to the Agency, however, reveal that he did not play any role in the children's early lives. Although he was released from custody fairly early in the dependency, he re-offended and was not able to remain at liberty for more than a short period of time, and offered no relative who could care for the children while he was incarcerated. We find no support in the evidence either for a conclusion that petitioner was a presumed father or that he could have attained the status of a presumed father before expiration of the reunification period. Accordingly, he was not entitled to reunification services. (*In re Zacharia D.*, *supra*, 6 Cal.4th at p. 453.) Given this conclusion, we need not address the question whether the services petitioner actually received were adequate.

## DISPOSITION

The petition is denied. Our decision is final as to this court immediately. (Rule 24(d).)

Haerle, J., and Lambden, J., concurred.