Filed 6/16/25  D.O. v. Superior Court CA2/6

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

D.O. et al.,

    Petitioners,

v.

THE SUPERIOR COURT OF
VENTURA COUNTY,

    Respondent;

VENTURA COUNTY HUMAN
SERVICES AGENCY,

    Real Party in Interest;

S.O., a Person Coming Under
the Juvenile Court Law,

    Real Party in Interest.

2d Juv. No. B345140
(Super. Ct. No. J073428)
(Ventura County)

> D.O. (Father) and M.O. (Mother) (collectively parents) have
filed a petition for extraordinary writ (Cal. Rules of Court, rules

8.452, 8.456) to challenge orders of the juvenile court granting a juvenile dependency petition (Welf. & Inst Code,[1] § 300), removing S.O., their minor child, from their custody, denying reunification services, and setting the case for a section 366.26 hearing. We conclude, among other things, that the court's findings are supported by substantial evidence. We deny the petition.

FACTS

On January 17, 2024, the Ventura County Human Services Agency (HSA) filed a juvenile dependency petition (§ 300, subds. (b)(1) & (c)), alleging that S.O., the parents' nine-year-old child, was "suffering" "serious emotional damage" as a result of the parents' conduct. HSA determined that Mother had failed to provide the child with "adequate food." It alleged that Father has "a history of substance abuse issues" that interferes with "his ability to provide adequate care and supervision to the child."

On January 3, 2024, HSA received a "referral" indicating that police were called because S.O. was walking alone in the dark. The child said he was "running away from home because his mother does not feed him." He was walking without shoes. He said Mother leaves him and his siblings "alone for hours at a time." The child told a social worker that he "has tried to make himself bleed so much that he loses enough blood to die." He "does not want to live because his mother is usually mad at him and makes him feel like he can't do anything right." The child was seen "eating food out of the trash at school." He has run away from home several times. He has told police that Mother

---

[1] All statutory references are to the Welfare and Institutions Code.

2

has "abused" him, but he "recants his story because he is fearful of the mother."

The family has a prior history with child protective services. In 2021, a school nurse reported that the parents' actions subjected S.O. to "an ongoing pattern of hunger and limited food intake" and the child is "underweight." On several occasions in 2021, the parents were offered "counseling and supportive services" by school personnel. The parents "refused these services."

The trial court issued an order for temporary placement of S.O. with HSA. Subsequently the child was placed in the temporary care of his paternal grandmother. The court found that "[t]here is a substantial danger to the physical health of the child" that requires him to be removed from his parents.

In a March 2025 jurisdiction/disposition report, HSA recommended that S.O. be declared a dependent of the court; that the parents be bypassed for reunification services (§ 361.5, subd. (b)(6)(C) [infliction of severe physical harm]); and that the court set a section 366.26 hearing. HSA determined that Mother should have no contact with the child because continued contact would be "detrimental to the child's well-being."

In its report HSA determined that Mother withheld food from S.O. and placed him under such unreasonable "constant intense monitoring and surveillance" that the child is considering suicide. Mother's "hyper restrictive diet" for him makes the child "so hungry that he steals food, eats out of trash cans, and even regurgitates his food to chew on the vomit so that he feels like he is eating." Mother physically "abuses" the child by "choking" him, "forcing him to vomit," holding his head under water, feeding him laxatives, and then refusing "to let him use the bathroom." "The

3

utter cruelty that the mother has perpetrated on [S.O.] over the past [seven] years has been illustrated over and over again." "[M]other has expressed a clear intention to continue her abusive behaviors should she be given another chance to parent [S.O.]." Father "allowed" Mother's actions to take place, subjecting the child to "suicidal ideation."

Social worker Veronica Perez testified HSA's reports accurately documented child abuse. S.O. was "honest." Mother would "bounce on [S.O.'s] stomach so that he would throw up." Medical reports showed the child suffered from depression. After the child was removed from the parents, his conditions improved. The child's current placement is beneficial for him and he is "doing great." He does not want any further contact with the parents.

Mother testified S.O. had a "leptin receptor deficiency," which causes him to eat too much. A doctor told her to start the food "portion control" and not provide him "seconds." Mother fed the child and did not punish him by "not feeding him." The child's claims that she choked him, held his head under water, put soap in his mouth, and slapped him "until he blacked out" were not true. She did not step on him to make him throw up. When asked whether she wanted S.O. to return to their home, Mother responded, "[M]y husband is very hesitant to have [S.O.] in the home unless he's . . . changing the behaviors around our family."

J.C.J., a babysitter, testified Mother's claims that S.O. would eat uncontrollably and that he was overweight were not true. The child was "skin and bones," Mother treated him "poorly," and the child was afraid of her.

4

S.O. testified his parents abused him.  Mother would hold his head under water, spank him with a wooden spoon, grab him by his hair and drag him to the bathroom, and not feed him.  When his head was under water, he could not breathe.  The parents put soap in his mouth.  S.O. complained to Father about Mother holding his head under water and not feeding him, but the conditions did not change.  He wants to continue to live with his grandparents because his parents "abused" him.

Doctor Sun Moon Lee testified that there was no indication that S.O. had a leptin receptor disorder.  The child did not have normal growth.  The cause of this abnormal growth was because he "didn't get enough calories."

Kathrine Russell, S.O.'s teacher, testified she made five child abuse referrals to HSA.  S.O. said he was not getting any food at home.

The juvenile court found that "the petition is true and correct."  S.O. is a dependent person under section 300.  It would be detrimental to the child's safety to place him with his parents.  The evidence supported bypassing reunification services for the parents.  The court scheduled a section 366.26 hearing.

DISCUSSION

The juvenile court's duty for dependent children under its jurisdiction is to make dispositions and placements in their best interests.  (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.)  "When a child cannot be returned to the parent within the statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a section 366.26 hearing."  (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1366.)  But the court may continue any required hearing if it is in the best interests of the child.  (§ 352.)

5

*Substantial Evidence*

We review the jurisdiction and disposition findings for substantial evidence. We draw all reasonable inferences in support of the judgment. There is a conflict between Mother's testimony and the testimonies of the social worker, the babysitter, the child, and Doctor Lee. The juvenile court resolved this conflict against the parents. We do not weigh the evidence, resolve evidentiary conflicts, or decide witness credibility. Those are matters exclusively decided by the trial court. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

The parents claim their evidence shows S.O. had a serious eating disorder causing him to overeat and their food restrictions for him were necessary.

But the issue is not whether some evidence supports the parents, it is whether substantial evidence supports the judgment. (*In re R.T.*, *supra*, 3 Cal.5th at p. 633.) The parents have not cited to the record. We cannot consider evidentiary claims without record citations. (*Cheryl S. v. Superior Court* (1996) 51 Cal.App.4th 1000, 1005.)

Moreover, the record shows HSA presented medical evidence showing that S.O. was evaluated at a hospital by medical staff who determined: 1) the parents' claims that the child was overweight and overeating were not true; 2) the child did not eat all the food he was provided; 3) after eating a meal, the child did not request more food; and 4) the parents conduct of depriving the child of food was inappropriate. Medical staff met with the parents to warn them that such conduct negatively impacts the child's health. They advised the parents "to avoid food restriction" for the child because it could lead to "malnutrition affecting overall growth and risk disordered eating

6

in [the] future." The parents ignored that warning. A member of the UCLA Medical Center staff made a referral to HSA in May 2023, noting that the child "is at risk of becoming malnourished" because of the parents' improper restrictive diet for him. Doctor Lee's testimony shows the child's growth was not normal because the parents did not provide him enough calories.

The issue is not whether S.O. had a particular medical condition as the parents claim, it is how the child was being treated by his parents. The parents have not cited to the record, and they have not shown the juvenile court's findings are not supported by substantial evidence. (*Cheryl S. v. Superior Court, supra*, 51 Cal.App.4th at p. 1005.)

<em>Reunification Services</em>

The parents claim the juvenile court erred by denying them reunification services. But reunification services may be bypassed where the parent has subjected the child to severe physical harm. (§ 361.5, subd. (b)(6)(C); *In re A.E.* (2019) 38 Cal.App.5th 1124, 1141.) Severe physical abuse includes the willful "prolonged failure to provide adequate food" (*In re Kenneth M.* (2004) 123 Cal.App.4th 16, 21) and " 'any other torturous act or omission that would be reasonably understood to cause serious emotional damage.' " (*Pablo S. v. Superior Court* (2002) 98 Cal.App.4th 292, 301.)

Here the juvenile court found the parents' reunification with S.O. would be detrimental to his safety. HSA showed there was a pattern of physical abuse for seven years. This included choking the child; forcing him to vomit; holding his head under water; unreasonably and deliberately restricting his diet, which resulted in starving him. It included giving him laxatives and then preventing him from going to the bathroom. The child had

7

to look for food in the trash. This abusive conduct was dangerous for the child because it caused him to run away multiple times, to hurt himself, and to consider suicide. HSA noted that Mother intends "to continue her abusive behaviors." It determined that her conduct showed a pattern of "utter cruelty" and that reunification or contact with the parents would endanger his safety.

HSA notes the parents also showed no interest in reunification services. Beginning in March 2024, the social worker left messages for Mother to provide her with "Moving Forward Together" and "Parent Education Services," but Mother did not respond. Mother did not request any participation in these family services. In April 2024, the social worker left a message for Mother regarding these family services and asked for a call back. Mother did not respond. In May 2024, the parents again did not respond to HSA's attempts to contact them regarding these family services. Mother made no request to visit S.O. Father also did not request visitation with the child. He also did not respond to HSA's attempts to talk with him.

The parents have not made a proper evidentiary challenge to the juvenile court's findings with record citations and have not shown why HSA's evidence did not support the bypass of reunification services. (*In re Kenneth M.*, *supra*, 123 Cal.App.4th at p. 21; *Pablo S. v. Superior Court*, *supra*, 98 Cal.App.4th at p. 301; *Cheryl S. v. Superior Court*, *supra*, 51 Cal.App.4th at p. 1005; *In re Christopher B.* (1996) 43 Cal.App.4th 551, 558.)

*Manipulation of S.O.'s Statements*

The parents claim the juvenile court improperly considered S.O.'s preference not to live with them. They argue the child's statements were not credible because he had been manipulated

8

by others.  But the credibility of the child's statements was exclusively decided by the trial court.  (*In re R.T.*, *supra*, 3 Cal.5th at p. 633.)  The child's desire not to live with the parents was a consistent claim he made from the beginning of this case.  He had repeatedly run away from home before HSA took jurisdiction, which undermines the claim that he had been recently manipulated.

The parents contend because S.O. was 10, the juvenile court erred by considering his preferences.  But the court may consider the preferences of a 10-year-old child on the issue of the persons he wants to live with.  (*In re Marriage of Burgess* (1996) 13 Cal.4th 25, 39.)  The court also found the child's choice was consistent with his best interests, which is the dispositive issue.  A dependent child of the juvenile court has the right to attend court hearings, "speak to the judge," and be involved in the development of his or her own case plan.  (§ 16001.9, subd. (a)(34)(A), (35).)

*Ineffective Assistance of Counsel*

The parents claim their counsel was ineffective for not calling additional witnesses and not introducing additional evidence.  But an "appellate court should not" brand "a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed."  (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267.)  Here all the relevant facts have not been presented because the parents have not cited to the record evidence supporting the court's orders.  Consequently, they have not shown how different decisions by counsel could have changed the result.  They therefore cannot show prejudice, which is a requirement for a successful ineffective assistance of counsel claim.  (*In re Vargas* (2000) 83 Cal.App.4th 1125, 1132.)

The parents make a number of ambiguous and conclusory allegations against their counsel. But the record shows their attorney provided an aggressive defense to attempt to protect their rights, made a comprehensive presentation of defense evidence, and extensively cross-examined witnesses and objected to adverse evidence. The HSA reports were well documented, supported by medical evidence and the social worker's testimony. Given the admissibility of those HSA reports (§ 355, subd. (b)), "reasonably competent counsel need not have objected to admitting such materials." (*In re Christopher A.* (1991) 226 Cal.App.3d 1154, 1162.)

### *Additional Evidence*

The parents claim that because there is more evidence they can present to support their position, the juvenile court's orders must be set aside. But they have not shown trial court error. If they have new evidence, they may file a section 388 petition and ask it to be heard with the section 366.26 hearing. The parents' remaining contentions do not support grounds for reversal.

### DISPOSITION

The petition is denied.

NOT TO BE PUBLISHED.

GILBERT, P. J.

We concur:

YEGAN, J.          BALTODANO, J.

10

Gilbert A. Romero, Judge

Superior Court County of Ventura

_____

D.O., in pro. per., and M.O., in pro. per., for Petitioners. No appearance for Respondent.

Tiffany N. North, County Counsel, Joseph J. Randazzo, Assistant County Counsel, for Real Party in Interest Ventura County Human Services Agency.

Amy Cannon, under appointment by the Court of Appeal, for Real Party in Interest S.O.