Filed 10/10/25  C.D. v. Superior Court CA2/6

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SIX

| | |
|---|---|
| C.D., <br><br> Petitioner, <br><br> v. <br><br> SUPERIOR COURT FOR THE COUNTY OF SANTA BARBARA, <br><br> Respondent; <br><br> SANTA BARBARA COUNTY CHILD WELFARE SERVICES, <br><br> Real Party in Interest. | 2d Civ. No. B347917 <br> (Super. Ct. No. 18JV00486-A) <br> (Santa Barbara County) |

C.D. (Mother) filed a petition for extraordinary writ (Cal. Rules of Court, rules 8.452, 8.456) to challenge orders of the juvenile court after it granted a juvenile dependency petition

(Welf. & Inst. Code,[1] § 300, subd. (b)(1), (g)); removed Mother's child, C.R.D., from her custody; terminated reunification services; and set the case for a section 366.26 hearing. We conclude, among other things, that the court's findings are supported by substantial evidence and Mother has not shown error. We deny the petition.

FACTS

On June 3, 2024, the Santa Barbara County Child Welfare Services (CWS) filed a juvenile dependency petition. CWS alleged Mother was "unstable," outside her house "rocking her son." She was "rambling, incoherent and unable to communicate." She was yelling "everyone needs to die." The child was removed from the home and Mother was placed on a mental health hold because "she was unable to care for herself and her child." Mother tested positive for methamphetamine. CWS noted that Mother had a prior dependency case involving this child. In 2018, the child was removed from the home because of Mother's "ongoing substance use of methamphetamines." The child was eventually returned to Mother and the dependency case was dismissed in 2021.

At the June 4, 2024, detention hearing, the juvenile court found there was a "substantial danger" to the child if he is not removed from the parents' home, and it ordered the child "detained."

On September 11, 2024, the juvenile court held a contested jurisdiction/disposition hearing. Mother testified that she planned to move to "Transition House." She was tested for drugs twice a week and had not tested positive. The court found it had

_____

[1] All statutory references are to the Welfare and Institutions Code.

jurisdiction and sustained the petition. It found the child was a "dependent of the juvenile court" and he would remain in out-of-home placement. It ordered Mother to receive reunification services that included her participation in psychological evaluation services.

On February 20, 2025, CWS filed a psychological evaluation of Mother by Doctor Laura Beltran, a psychologist. Beltran concluded that Mother "does not appear to be emotionally stable enough to provide a safe and nurturing home environment for [the child]." "[I]t does not appear [Mother] is able to effectively communicate with [the child], express empathy, and resolve conflicts peacefully." Mother "has an extensive history of not making reasonable efforts to consistently treat her conditions." She "has not demonstrated an ability to become a more effective, stable or safe parent."

On July 17, 2025, CWS filed a 12-month status review report recommending that the child remain in out-of-home care and that reunification services for Mother be terminated. CWS determined that Mother had not complied with her case plan. Mother missed drug testing appointments. She discontinued prescribed medications without approval of her doctor. She missed mental health treatment appointments and did not attend "AA/NA meetings." CWS concluded there was no "substantial probability that the child can be safely returned to [Mother]."

At the July 28, 2025, hearing, Mother testified that reunification with her son would be in his best interests. She said she discontinued the medications her doctor prescribed without consulting with the doctor. She reduced her therapy sessions from weekly to every other week without permission from her therapist. CWS introduced status reports showing that

Mother had not complied with her case plan and medical reports concerning Mother's continuing mental health problems. The juvenile court terminated reunification services and set the case for a section 366.26 hearing.

DISCUSSION

The juvenile court's duty for dependent children under its jurisdiction is to make dispositions and placements in their best interests. (*In re Lauren R.* (2007) 148 Cal.App.4th 841, 855.) "When a child cannot be returned to the parent within the statutory time frame, the court is required to establish a permanent plan for the child and refer the case for a section 366.26 hearing." (*In re Ronell A.* (1996) 44 Cal.App.4th 1352, 1366.) The court may continue any required hearing if it is in the best interests of the child. (§ 352.)

*Substantial Evidence*

We review the court's findings for substantial evidence. We draw all reasonable inferences in support of the judgment. We do not weigh the evidence, resolve evidentiary conflicts, or decide witness credibility. Those are matters exclusively decided by the trial court. (*In re R.T.* (2017) 3 Cal.5th 622, 633.)

The juvenile court terminated reunification services. It found return of the child to Mother "would create a substantial risk of detriment to the safety, protection, or physical or emotional well-being of the child."

Mother has not cited to the record or to any of the evidence the juvenile court relied on for its findings. We cannot consider evidentiary claims without record citations. (*Cheryl S. v. Superior Court* (1996) 51 Cal.App.4th 1000, 1005.) Mother contends she has complied with her case plan. But her case plan

included substance abuse treatment and drug testing. Mother claims she did not have any positive drug tests.

But CWS noted, "[W]hile [Mother] has tested negative for all substances in the samples submitted, she has missed several drug tests, including unexcused absences in February, March, May, and June 2025. . . . Moreover, despite recommendations, [Mother] has not attended any 12-step recovery meetings since February 2025."

Mother's case plan also required her to complete mental health treatment. The juvenile court found Mother did not comply with this requirement of her plan. It found her need "to treat [her] underlying mental health condition has simply not been either absorbed by [Mother] or put into effect." It found, "[Mother] has an extensive history of not making reasonable efforts to consistently treat her conditions, and with the passage of time, she has not demonstrated an ability to become a more effective, stable or safe parent."

These findings are supported by evidence CWS presented. CWS noted that Mother "has participated in therapy intermittently." She "missed most of her recommended biweekly therapy sessions between February and May 2025." "Her psychological evaluation and Behavioral Wellness assessments repeatedly emphasized the need for ongoing individual therapy to address emotional regulation, trauma, and behaviors that impact her parenting capacity." As part of her psychiatric treatment, her doctor prescribed Wellbutrin and Topamax. But Mother stopped taking these medications in June 2025 "without medical clearance and has not returned to psychiatric care since her last appointment on February 28, 2025." CWS determined Mother's "incomplete and inconsistent participation in core services

related to mental health and substance use means she has not yet demonstrated the capacity to safely parent independently. The child's emotional and physical well-being cannot be assured at this time without a stable, consistent pattern of treatment compliance and sobriety."

The juvenile court also noted that Mother's mental health issues are a recurring problem. There was a prior dependency proceeding regarding this child in 2018 as a result of Mother's "ongoing substance use of methamphetamines." The court quoted from the medical opinion of Doctor Beltran who determined that "[b]ased on past behavior, there is a high probability" Mother "will relapse, increasing the risk for neglect, abuse, substance abuse, domestic violence and mental health issues that jeopardize the child . . . ."

Mother has not shown error. She has not cited to any evidence in the record that would support a reasonable probability of a different result in her favor.

DISPOSITION

The petition is denied.

<u>NOT TO BE PUBLISHED.</u>


GILBERT, P. J.

We concur:


BALTODANO, J.


CODY, J.


6

Gustavo E. Lavayen, Judge

Superior Court County of Santa Barbara

_____

C.D., in pro. per., for Petitioner.

No appearance for Respondent.

Rachel Van Mullem, County Counsel, Lisa A. Rothstein, Deputy, for Real Party in Interest.