Filed 6/28/13  In re A.C. CA1/5

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| **In re A.C., a Person Coming Under the Juvenile Court Law.** | |
| **J.C.,** | |
| **Petitioner,** | |
| **v.** | **A138574** |
| **THE SUPERIOR COURT OF CONTRA COSTA COUNTY,** | |
| **Respondent;** | **(Contra Costa County Super. Ct. No. J12-00130)** |
| **CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES BUREAU,** | |
| **Real Party in Interest.** | |

Pursuant to rule 8.452 of the California Rules of Court, petitioner J.C. seeks a writ of mandate directing the juvenile court to vacate its orders denying his request for presumed father status (Fam. Code, § 7611) with respect to his daughter, A.C. (Minor), and setting this matter for a Welfare and Institutions Code section 366.26 hearing on August 6, 2013.  We deny the petition.

BACKGROUND

On January 25, 2012, the Contra Costa County Children and Family Services Bureau (Bureau) filed a juvenile dependency petition alleging Minor, born in February

1

2010, was within the jurisdiction of the court under Welfare and Institutions Code, section 300, subdivision (b). The petition alleged Minor's mother, C.L. (Mother),[1] placed Minor at risk of physical and/or emotional harm because Mother's boyfriend, J.C., was physically abusive.

The Bureau's detention/jurisdiction report related allegations of domestic violence by J.C., but also stated that Mother had recanted the allegations. The Bureau conveyed information from a police report to the effect that Mother had dated and lived with J.C. for five years, and that Mother, J.C., and Minor had lived with J.C.'s father for the past two and one-half years. On January 26, 2012, the juvenile court detained Minor.

In February 2012, the Bureau filed an amended petition adding an allegation that Mother had failed to provide Minor adequate nutrition and medical treatment, resulting in Minor's failure to thrive. A March addendum report detailed the medical facts underlying the allegation. On March 29, the juvenile court sustained the amended petition, although the domestic violence allegations were amended to state simply that Mother "was in a domestic violence relationship" with J.C.

The Bureau's dispositional report indicated J.C. "wanted to raise his status to that of presumed father" and he stated "that he is the father of the child, and that he and [M]other were living together at the time of conception and birth of the child." J.C. also told the Bureau he did not believe he could care for Minor "right now because he has so many troubles." Mother denied J.C. was Minor's biological father, and she stated J.C. was not affectionate with Minor and did not care for Minor or provide financial support. At the disposition hearing on May 1, 2012, Mother was awarded family reunification services.

Although J.C. was aware of the juvenile dependency proceedings and had been interviewed by the Bureau, he did not actually appear in court until March 19, 2013, well over a year after the petition was filed. The court ordered genetic testing, which showed J.C. is Minor's biological father.

---

[1] Mother is not a party to this appeal.

2

A combined six- and 12-month review hearing was conducted on four dates between April 19 and May 1, 2013.  J.C. testified he lived with Minor from the time of her birth until commencement of the dependency proceedings.  He attended Minor's prenatal appointments and some of the appointments after her birth.  He testified he worked after Minor's birth, although he did not testify he financially supported her.  He considered Minor to be his daughter and held her out to the community as such.

Petitioner acknowledged he was aware of the dependency proceedings regarding Minor.  In explaining why he did not promptly take steps to obtain custody of Minor, J.C. testified that Mother's prior counsel advised him not to get involved until later in the dependency proceeding.  J.C. acknowledged he had failed to visit Minor during the entire dependency proceeding; he said he had not tried to visit her because he was not aware he was able to do so.

On May 1, 2013, the juvenile court denied J.C.'s request for "presumed father" status, terminated Mother's reunification services, and scheduled a Welfare and Institutions Code section 366.26 hearing on August 6, 2013.

J.C.'s petition for writ of mandate followed.

DISCUSSION

J.C. contends the juvenile court erred in denying his request for presumed father status.  He claims he provided Minor with financial and emotional support by bringing her into his home and supporting her during the first 21 months of her life.  We review the juvenile court's ruling for substantial evidence, viewing " 'all factual matters most favorably to the prevailing party in support of the judgment, including all reasonable inferences and resolving all conflicts accordingly.'  [Citations.]" (*Adoption of A.S.* (2012) 212 Cal.App.4th 188, 209.)

"The Uniform Parentage Act (Fam. Code, § 7600 et seq.) . . . provides the statutory framework by which California courts make paternity determinations. [Citations.]  Under this statutory scheme, California law distinguishes 'alleged,' 'biological,' and 'presumed' fathers. [Citation.]  'A man who may be the father of a child, but whose biological paternity has not been established, or, in the alternative, has

3

not achieved presumed father status, is an "alleged" father. [Citation.]' [Citation.] 'A biological or natural father is one whose biological paternity has been established, but who has not achieved presumed father status . . . .' [Citation.] [¶] 'Presumed' fathers are accorded far greater parental rights than alleged or biological fathers. [Citation.] Presumed father status is governed by [Family Code] section 7611, which sets out several rebuttable presumptions under which a man may qualify for this status, generally by marrying or attempting to marry the child's mother or by publicly acknowledging paternity and receiving the child into his home. [Citations.] Biological fatherhood does not, in and of itself, qualify a man for presumed father status under [Family Code] section 7611. On the contrary, presumed father status is based on the familial relationship between the man and child, rather than any biological connection. [Citation.]" (*In re J.L.* (2008) 159 Cal.App.4th 1010, 1018, fn. omitted; see also *In re Zacharia D.* (1993) 6 Cal.4th 435, 448-449.) "Only presumed fathers are entitled to reunification services and to possible custody of the child. [Citation.]" (*In re E.O.* (2010) 182 Cal.App.4th 722, 726.) One who claims an entitlement to presumed parent status has the burden of proving the facts supporting that entitlement by a preponderance of the evidence. (*Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 585-586.)

J.C. contends the juvenile court erred in denying his request for presumed father status because he received Minor into his home, supported her, and openly held her out as his natural child. (*In re Zacharia D.*, *supra*, 6 Cal.4th at p. 449; *Adoption of Kelsey S.* (1992) 1 Cal.4th 816, 849; Fam. Code, § 7611, subd. (d).) However, the evidence did not clearly show that J.C. brought Minor into his home; instead Mother, J.C., and Minor all lived in the home of J.C.'s father. (See *In re Sarah C.* (1992) 8 Cal.App.4th 964, 973 [the biological father did not bring the minor into his home where he moved into the mother's home].) Although J.C. repeatedly asserts in his petition he provided Minor financial and emotional support, his petition does not cite to any evidence in the record supporting those assertions. Mother told the Bureau that J.C. did not contribute to Minor's support or provide her any care while they were living together, and his testimony failed to show the contrary. Although J.C. testified he worked after Minor was

4

born and lived with her and Mother in his father's home, he did not testify he paid rent for Minor or covered any of her other living expenses, and he did not testify he took care of Minor.

Finally, J.C. did not request presumed father status until well more than a year after commencement of the dependency proceedings, and the evidence is undisputed that J.C. did not visit Minor during that period. This is contrary to the proposition that efforts to establish parental rights to a child in dependency proceedings require a "time-critical response." (*In re Zacharia D., supra*, 6 Cal.4th at p. 452.) J.C.'s lack of alacrity occurred "at the risk of ultimately losing any 'opportunity to develop [his] biological connection [with Minor] into a full and enduring relationship.' [Citation.]" (*Ibid.*)[2]

The trial court did not err in denying J.C.'s request for presumed father status.

## DISPOSITION

The juvenile court's orders are affirmed. Because the Welfare and Institutions Code section 366.26 hearing is set for August 6, 2013, our decision is immediately final as to this court (Cal. Rules of Court, rule 8.490(b)(3)), and the request for a stay of that hearing is denied.

---

[2] J.C. attempted to justify his failure to promptly seek presumed parent status, but we defer to the juvenile court's implied finding that his justifications were not credible or sufficient.

5

_____

SIMONS, J.

We concur.

_____

JONES, P.J.

_____

NEEDHAM, J.

6