Filed 11/20/20 In re A.N. CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| In re A.N. et al., Persons Coming Under the Juvenile Court Law. | B305208 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | (Los Angeles County Super. Ct. No. 18CCJP02285A–C) |
| Plaintiff and Respondent, | |
| v. | |
| F.O., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County. Daniel Zeke Zeidler, Judge. Affirmed.

Roni Keller, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, Kim Nemoy, Assistant County Counsel, and Stephen D. Watson, Deputy County Counsel, for Plaintiff and Respondent.

_____

Appellant F.O. appeals from the juvenile court orders terminating her parental rights and freeing the minors for adoption.[1]  She argues the juvenile court abused its discretion in failing to find the "beneficial parental relationship exception" to adoption applies.  (Welf. & Inst. Code, § 366.26, subd. (c)(1)(B)(i).)[2]  We affirm.

## FACTS

On April 10, 2018, the Los Angeles County Department of Children and Family Services filed a dependency petition on behalf of five-year-old A.N., four-year-old S.N., and three-year-old G.N. pursuant to section 300, subdivisions (a) and (b).  The petition alleged the minors were at risk because of the parents' history of violent altercations in front of them.  On March 15, 2018, the father strangled the mother, causing her to lose consciousness; he also threatened to kill her and burn down the minors' house.  On April 6, 2018, the mother punched the father with a closed fist, and he scratched her eye.  The father had a history of drug abuse, including methamphetamine, and the mother would allow him to have access to the children in

_____

[1]     Appellant F.O. previously filed a petition for extraordinary relief under rule 8.452 of the California Rules of Court.  (*F.O. v. Superior Court*, B299479.)  The petition was denied on the ground it was inadequate.  (*Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570, 577–584.)

[2]     All statutory references, unless otherwise designated, are to the Welfare and Institutions Code.

violation of a domestic violence restraining order and a criminal protective order. The minors were detained and placed with a paternal great aunt and her partner. Monitored visits were ordered.

On July 2, 2018, the juvenile court sustained the petition, declared the minors dependents of the court, and provided reunification services and monitored visits. The minors were provided cognitive behavioral services beginning in January 2019, "to reduce trauma related symptoms of anxiety and nightmares." A.N. was "yelling and not listening to her elders in placement and at school." She was receiving trauma focused therapy "to address the PTSD that she is experiencing." S.N. was "experiencing flashbacks" and was having "anger outbursts and shutting down (refusing to talk), especially after contact with mother." G.N. had "symptom of anxiety, (i.e. feeling nervous and fearful in response to talking about mommy/event)" and was having "difficulty falling asleep, flashback[s] and nightmares." In March 2019, it was reported that the mother's monitored visits with the minors "have been sporadic."

On June 4, 2019, mother was found in partial compliance with her court-ordered case plan, and reunification services were terminated. One month later, reunification services for the father were also terminated.[3]

On November 12, 2019, the Department submitted its report for the section 366.26 hearing. The minors continued to reside with the paternal great aunt and her partner; they felt loved and cared for. "The children report that they like visiting with mother [twice a month] but enjoy being able to return to their home with caregivers." Telephone calls with the mother are

---

[3]     Presumed father S.N. is not a party to this appeal.

monitored. The two oldest "have reported that they speak with mother on the phone, but at times do not want to speak with her." In August 2019, the oldest "cried because she was afraid that CSW would return her to the care of mother . . . ." It was the recommendation of the Department that all parental rights be terminated and the minors be placed for adoption.

In the Last Minute Information for the Court, the Department reported that on September 30, 2019, it met with the mother who stated that, "she did not know why she was being punished when she was the victim. CSW asked mother if she acknowledged her role in failing to protect her children by remaining in a harmful relationship and exposing her children to harmful situations. Mother stated that she would take the responsibility of what father did to her in front of the children but she was also a victim." The caregivers reported that on October 26, 2019, "mother told [A.N.] that she was going to live with her again and needed to tell the judge that she wanted to live with her. [A.N.] shared with CSW that mother scared her . . . ." The Monday after the visit, A.N. became ill at school. "It appears that A.N. often feels ill after having visits with mother and going to the [nurse's] offices is a recurring behavior." The October 26 visit also made the monitor uncomfortable. The mother was on her telephone and at times was attempting to make contact with her boyfriend who was taking pictures from the upper level of the mall. The monitor was no longer willing to monitor the visits. The caregivers also reported that "mother's phone calls are not consistent and at times mother will attempt to call after the scheduled times."

The 366.26 hearing was finally scheduled for March 12, 2020. In the Last Minute Information for the Court, the monitors

4

for the mother's visits, which are held in the Department's offices, "have stated that the visits are unhealthy as the children do not listen to mother. On one of the visits, [a monitor] reported that [G.N.] asked mother to teach him how to spell, 'I hate you' and then gave the letter to mother and on the same visit spit on mother." The minors "have reported that they enjoy visits with mother now because mother promises them toys and candy." The therapist indicated that the minors had progressed well and therapy was no longer needed.

At the hearing, the mother testified that the children seem happy to see her at these visits, call her "mom," and are disappointed when the visits are over. She brings them snacks and little gifts and talks with them about what is going on in their lives. She knows their likes and dislikes and tries to help them deal with situations when they fight over a toy or become argumentative. She talks with the minors over the telephone when they want to. When asked about doctor's appointments and other health related issues, she said she is aware "like 50 percent. I'm not always aware of their appointments or—but when I am made aware of it, I will follow up and, you know, how did it go." The mother also submitted a progress report from Abundance Guidance Center. It was offered to show she has learned skills that would show she has the ability to interact appropriately with the minors.

The mother argued the court should find the beneficial parental exception applies and not terminate the mother's parental rights. The Department recommended that the juvenile court select adoption as the permanent plan and terminate mother's parental rights. Minor's counsel supported the Department and also asked the court to select adoption and

terminate parental rights.  On March 12, 2020, the court found the minors adoptable, concluded the exception did not apply, and terminated the mother's parental rights.

## DISCUSSION

At the section 366.26 hearing, the juvenile court "'shall terminate parental rights and order the child placed for adoption" if it finds that "it is likely the child will be adopted." (*In re Celine R.* (2003) 31 Cal.4th 45, 53.)  Here, the paternal aunt and her partner have indicated they wish to adopt the minors.

There is an exception to this rule known as the "beneficial parental relationship exception."  Subdivision (c)(1)(B)(i) of section 366.26 requires termination of parental rights "unless" the parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship."  Here, the court found that "mother has maintained regular and consistent visitation and contact," but then stated that, "I can't find that that parental role and relationship outweighs the benefits of permanence in adoption for the children, nor that it would be detrimental to terminate that relationship . . . ."

The analytical framework is well established.  First, the burden was on the mother to prove "her relationship with the children would outweigh the well-being they would gain in a permanent home with an adoptive parent.  [Citation.]  Evidence of frequent and loving contact is not enough to establish a beneficial parental relationship.  [Citation.]  The mother must also show she occupies a parental role in the children's lives." (*In re Noah G.* (2016) 247 Cal.App.4th 1292, 1300 (*Noah G.*); see also *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1350 [makes no

6

sense to forgo adoption when no real parental relationship shown].)

Second, the standard of review in "evaluating the juvenile court's determination as to the factual issue of the existence of a beneficial parental relationship, [courts] review for substantial evidence. [Citation.] But whether termination of the parental relationship would be detrimental to the child as weighed against the benefits of adoption is reviewed for abuse of discretion." (*Noah G.*, *supra*, 247 Cal.App.4th at pp. 1300–1301.)

Finally, "[i]n the context of the dependency scheme prescribed by the Legislature, we interpret the 'benefit from continuing the [parent/child] relationship' exception to mean the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

Here, the juvenile court found by clear and convincing evidence that the beneficial parental relationship exception did not apply. This was not a close case. It is evident from the record that there was no parent/child relationship between the mother and any of her children, much less a substantial, positive emotional attachment. The minors had been traumatized by the history of extreme domestic violence. After successful trauma

therapy, A.N. at best felt sorry for the mother; the younger siblings were impressed at the monitored visits with promises of toys and candy. In contrast, the minors spoke of safety and feeling cared for with the caregivers, traits one associates with a parental relationship. Nothing in the record, and in particular nothing in the mother's testimony at the hearing, suggested she had a parental relationship with the minors.

The mother points to *In re E.T.* (2018) 31 Cal.App.5th 68, where the reviewing court found the mother had met the parental relationship standard. But that case is clearly distinguishable. There, the mother did all her programs to maintain her sobriety and to become a better parent. (*Id.* at p. 77.) The children were very attached. (*Ibid.*) Here, mother had completed a residential treatment program but did not complete her domestic violence program due to excessive absences. She did not show a commitment to improving herself in a way that would allow her to become a better parent. It was more about keeping the minors from father. Settling accounts with the other parent is not a compelling reason to apply the exception.

Appellant's backup argument is that the court should have ordered a permanent plan of legal guardianship. It does not appear this argument was raised below and therefore it has been waived. Even if the issue had been properly preserved, it does not survive critical analysis. Once the juvenile court determines parental rights are terminated, it must select adoption as the preferred choice if adoption is likely. It cannot select a less secure and permanent placement such as legal guardianship. (*In re Teneka W.* (1995) 37 Cal.App.4th 721, 728.)

Finally, appellant argues this appeal has "critical importance. The question is how we treat battered women and

how we will continue to treat them in the future." Mother has continually argued she was the victim of domestic violence and that there is something perverse in an order terminating her parental rights but allowing father "access" to the minors because the paternal great aunt and her partner will likely be the adoptive parents. Even if the premise were accepted, the focus of this appeal is whether the court selected the appropriate permanent plan and whether the exception applied as to the mother. Why the minors were taken into the dependency system, and whether the father might have "access" to them after adoption, is irrelevant.

## DISPOSITION

The orders of the juvenile court terminating parental rights are affirmed.


SALTER, J.[*]

We Concur:



GRIMES, Acting P. J.



STRATTON, J.

---

[*] Judge of the Orange Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.