Filed 3/6/23  Dorothy P. v. Super. Ct. CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| DOROTHY P., | No. B323637 |
| Petitioner, | (Super. Ct. No. 20CCJP02576A) |
| v. | |
| THE SUPERIOR COURT OF LOS ANGELES COUNTY, | |
| Respondent; | |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, | |
| Real Party in Interest. | |

ORIGINAL PROCEEDINGS; petition for extraordinary writ. Gabriela H. Shapiro, Juvenile Court Referee. Petition denied.

Jonathan Lynn, under appointment by the Court of Appeal, for Petitioner.

No appearance for Respondent.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Tracey Dodds, Principal Deputy County Counsel, for Real Party in Interest.

The Children's Law Center of Los Angeles, Ann-Marissa Cook and Nikole Omotoy for Minor.

_____

Dorothy P., the mother of seven-year-old Rozlyn G., seeks extraordinary writ relief (Welf. & Inst. Code, § 366.26, subd. (*l*);[1] Cal. Rules of Court, rule 8.452) from the juvenile court's order at the 12-month review hearing (§ 366.21, subd. (f)) terminating her reunification services and setting a hearing pursuant to section 366.26 to consider implementation of a permanent plan of adoption for her daughter. Dorothy contends she was in substantial compliance with her case plan, including drug testing, and demonstrated at the review hearing, as specified by section 366.21, subdivision (g), a substantial likelihood that Rozlyn could be returned to her care with the provision of additional family reunification services. The authority of the juvenile court at the 12-month review hearing to continue the case and extend reunification services upon finding a substantial probability the child will be returned to the physical custody of his or her parent and safely maintained in the home, however, is

---

[1] Undesignated statutory references are to this code.

limited to a period not to exceed 18 months from the date the child was originally taken from the physical custody of his or her parent. (§ 366.21, subd. (g)(1); see § 361.5, subd. (a)(3)(A).) Here, Rozlyn was removed from Dorothy's physical custody on March 3, 2021, more than 18 months prior to the September 13, 2022 section 366.21, subdivision (f), hearing. We deny on the merits Dorothy's petition for extraordinary writ.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *Rozlyn's Removal from Dorothy, the Sustained Dependency Petition and the Disposition Orders*

The Los Angeles County Department of Children and Family Services received an initial referral in mid-March 2020 indicating then-four-year-old Rozlyn might be a victim of parental neglect. After an investigation the Department filed a petition on behalf of Rozlyn on May 8, 2020 pursuant to section 300, subdivision (b)(1), alleging in part that Dorothy had failed to protect the child due to Dorothy's mental and emotional problems and substance abuse issues.

At the May 13, 2020 detention hearing the juvenile court released Rozlyn to Dorothy with various conditions, including "Mother shall continue to test and test cleanly." The court stated it shared the Department's concern about Dorothy's continued marijuana use and agreed Rozlyn could be detained if Dorothy failed to abide by the conditions imposed. On March 3, 2021, following an incident of domestic violence between Dorothy and Colby G., Rozlyn's presumed father, during which Dorothy left Rozlyn alone with Colby to smoke marijuana in a different room, the court ordered Rozlyn detained and removed her from Dorothy's care.

3

On July 21, 2021 the juvenile court sustained in part an interlineated second amended petition pursuant to section 300, subdivision (b)(1), finding Dorothy had mental and emotional problems, including bipolar depression, that rendered her incapable of providing Rozlyn with appropriate care and supervision; Dorothy had a history of substance abuse and was a current abuser of marijuana, which, given the child's young age, also rendered Dorothy unable to provide Rozlyn with appropriate care; Colby had mental and emotional problems, including schizophrenia, that rendered him incapable of providing Rozlyn appropriate care; and Dorothy and Colby had a history of domestic violence, including on numerous occasions violating court-issued protective orders restraining Colby from having contact with Dorothy. At disposition the court declared Rozlyn a dependent child of the court, removed her from the care, custody and control of her parents and ordered her suitably placed. Family reunification services were ordered for Dorothy and Colby. Dorothy's case plan required her to participate in weekly random, on-demand drug testing, a support group for victims of domestic violence and continued mental health treatment with a psychiatrist; to take all prescribed psychotropic medication; and to abide by all outstanding court orders. She was permitted monitored visitation with Rozlyn. The court also ordered the Department to begin proceedings under the Interstate Compact on the Placement of Children (ICPC) to allow Rozlyn's placement with her maternal grandparents in New York.[2]

---

[2]     Dorothy appealed the jurisdiction findings regarding her emotional problems and substance abuse issues and that portion of the disposition order requiring her to drug test, but not the finding her history of domestic violence with Colby endangered

4

### 2. *The Six-month and 12-month Review Hearings and Order Terminating Reunification Services*

The Department's January 18, 2022 report for the six-month review hearing (§ 366.21, subd. (e)) stated Dorothy had four positive drug tests and failed to appear nine times for required random drug tests. Dorothy was participating in mental health counseling. According to the report, Dorothy had indicated she wanted her parents to have custody of Rozlyn, and the maternal grandparents had expressed a desire to have Rozlyn in their custody. At the hearing on February 14, 2022 the juvenile court ordered continued reunification services for Dorothy and Colby.

Dorothy petitioned for modification of prior court orders on August 12, 2022 (§ 388), asserting she was in full compliance with her case plan and requesting the court either return Rozlyn to her custody or grant the maternal grandparents legal guardianship of Rozlyn. She attached letters from her substance abuse program indicating she had remained sober while in treatment and "has made progress since June 8, 2022." The court denied the petition without a hearing, finding it did not state a change of circumstance and the requested modifications would not be in Rozlyn's best interest.

The Department's August 12, 2022 report for the 12-month review hearing (§ 366.21, subd. (f)) stated Dorothy had seven

---

Rozlyn or the order declaring Rozlyn a dependent child of the court and removing Rozlyn from the care and custody of Dorothy and Colby. We held Dorothy's limited challenge to the jurisdiction findings was not justiciable and the order requiring her to drug test well within the juvenile court's discretion. (*In re Rozlyn G.* (Nov. 15, 2022, B314519) [nonpub. opn.].)

positive tests and had failed to appear five times on 21 unexcused drug test dates. She had attended an out-patient substance abuse treatment program; participated in therapy for her mental health issues; was compliant with her medication; and had enrolled in, and attended seven sessions of, a domestic violence course. Dorothy had again told the social worker she wanted the maternal grandparents to be Rozlyn's legal guardians.

On August 15, 2022, the date scheduled for the 12-month review hearing, the court ordered an expedited ICPC evaluation with the State of New York and allowed Rozlyn to have a 29-day visit with her maternal grandparents. The review hearing was continued to September 13, 2022.

At the hearing on September 13, 2022 the juvenile court found that continued jurisdiction was necessary and by clear and convincing evidence that the return of Rozlyn to the physical custody of her parents would create a substantial risk of detriment to the child. It also found the Department had complied with the case plan and made reasonable efforts to return Rozlyn to a safe home but that neither Dorothy nor Colby had made substantial progress toward alleviating the causes necessitating Rozlyn's out-of-custody placement. The court terminated reunification services and set a selection and implementation hearing pursuant to section 366.26 for January 10, 2023[3]—a date that was subsequently continued to

---

[3] The court's minute order setting the section 366.26 hearing directed the Department to prepare a written visitation schedule for the parents; to interview Dorothy, Colby and Rozlyn "about the visits, their feelings about a parental-child bond and any emotional attachment"; and to address those issues raised in the interviews in its report for the hearing.

March 14, 2023 with an order directing the Department to fully comply with its inquiry obligations under the Indian Child Welfare Act of 1978 (ICWA) (25 U.S.C. § 1901 et seq.). The court ordered Rozlyn placed with her maternal grandparents.

3. *Dorothy's Petition for Extraordinary Writ Relief*

Dorothy filed a petition for extraordinary writ relief on December 1, 2022, challenging the order setting the section 366.26 hearing (Cal. Rules of Court, rule 8.452(a)). As grounds for the petition Dorothy asserts she had been in substantial compliance with her case plan and her recent negative drug tests, combined with her progress in her classes, were sufficient to show the court there was a substantial likelihood Rozlyn would be returned to her custody if reunification services were continued pursuant to section 366.21, subdivision (g)(1).[4]

Dorothy does not argue the juvenile court erred in finding the Department had established that return of Roslyn to Dorothy at the time of the hearing would create a substantial risk of detriment to the safety or physical or emotional well-being of the child and that reasonable services had been provided prior to the 12-month review hearing. Nor does she contend she comes within one of the limited categories of parents for whom more than 18 months of reunification services may be ordered

---

[4] Although Colby filed a notice of intent to file writ petition, his counsel notified this court pursuant to *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570 that she was unable to file a petition on the merits. Colby did not thereafter file a petition for extraordinary writ.

7

pursuant to sections 361.5, subdivision (a)(4)(A), and 366.22, subdivision (b).[5]

We issued an order to show cause on December 14, 2022, stating our intention to decide the matter on the merits (Cal. Rules of Court, rule 8.452(d)).

## DISCUSSION

Section 361.5, subdivision (a)(1)(A), provides, for a child such as Rozlyn who was at least three years old on the date of initial removal from the physical custody of the child's parent, "court-ordered services shall be provided beginning with the dispositional hearing and ending 12 months after the date the child entered foster care as provided in Section 361.49,[6] unless

---

[5] Sections 361.5, subdivision (a)(4)(A), and 366.22, subdivision (b), authorize the juvenile court to extend reunification services beyond 18 months in specific limited circumstances, including for a parent making significant and consistent progress in a court-ordered residential substance abuse treatment program. There are also cases in which appellate courts have ruled reunification services may continue beyond the 18-month statutory period, but those involved truly exceptional situations in which an external factor thwarted efforts at reunification. (See, e.g., *In re Elizabeth R.* (1995) 35 Cal.App.4th 1774, 1787, 1796 [mother was hospitalized during most of the reunification period; after her release the child welfare agency attempted to restrict visitation]; see generally *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864, fn. 9.)

[6] Section 361.49 defines the date of foster care entry as the earlier of the date of the jurisdiction hearing or 60 days after the child was initially removed from the physical custody of his or her parent. Because Rozlyn was first removed from Dorothy's

8

the child is returned to the home of the parent or guardian."  For Rozlyn, that 12-month period ended on May 2, 2022.

Section 361.5, subdivision (a)(3)(A), however, provides an exception to the 12-month limit, authorizing the juvenile court to extend court-ordered services "up to a maximum time period not to exceed 18 months after the date the child was originally removed from the physical custody of the child's parent or guardian if it can be shown, at the hearing held pursuant to subdivision (f) of Section 366.21, that the permanent plan for the child is that the child will be returned and safely maintained in the home within the extended time period."  Subdivision (a)(3)(A) further provides, "The court shall extend the time period only if it finds that there is a substantial probability that the child will be returned to the physical custody of the child's parent or guardian within the extended time period or that reasonable services have not been provided to the parent or guardian."

Section 366.21, subdivision (g), the basis for Dorothy's petition for extraordinary writ, likewise provides, if the 12-month period has been met or exceeded and the child is not returned to the custody of a parent, the court may "[c]ontinue the case for up to six months for a permanency review hearing [pursuant to section 366.22], provided that the hearing shall occur within 18 months of the date the child was originally taken from the physical custody of his or her parent or legal guardian.  The court shall continue the case only if it finds that there is a substantial probability that the child will be returned to the physical custody of his or her parent or legal guardian and safely maintained in

---

custody on March 3, 2021, her date of entry was May 2, 2021, several months prior to the jurisdiction hearing.

9

the home within the extended period of time or that reasonable services have not been provided to the parent or legal guardian."

Here, as argued by both the Department and Rozlyn in opposing Dorothy's petition, Rozlyn was originally removed from Dorothy's custody on March 3, 2021; and the 18-month period for extension of reunification services (and for holding a section 366.22 review hearing) ended on September 3, 2022, 10 days before the section 366.21, subdivision (f), hearing.  As a consequence, given the unchallenged findings that Rozlyn could not be safely returned to Dorothy as of the hearing date and the Department had provided Dorothy with reasonable reunification services, absent a finding that Rozlyn was not a proper subject for adoption and had no one willing to accept a legal guardianship (§ 366.21, subd. (g)(5)), the juvenile court had no option other than to terminate reunification services and set the section 366.26 hearing.  (§ 366.21, subd. (g)(4); see *Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 249 ["[a]t the 12-month review, if the court does not return the child and finds that there is no substantial probability of return to the parent within 18 months of the original removal order, the court must terminate reunification efforts and set the matter for a hearing pursuant to section 366.26 for the selection and implementation of a permanent plan"]; see also *Georgeanne G. v. Superior Court* (2020) 53 Cal.App.5th 856, 864 ["[t]he Legislature has determined the juvenile court may generally offer family reunification services for a maximum period of 18 months"].)

## DISPOSITION

Dorothy's petition for extraordinary writ is denied.


PERLUSS, P. J.

We concur:


SEGAL, J.


FEUER, J.