Filed 12/9/20  P. v. Sims CA4/2
See Dissenting Opinion

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E075159 |
| v. | (Super.Ct.No. FSB17003182) |
| MARSHALL ALLEN SIMS IV, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Dwight W. Moore, Judge.  Affirmed.

Lisa A. Kopelman, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

I

INTRODUCTION

In October 2017, defendant and appellant Marshall Allen Sims IV pleaded guilty to assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4)). Defendant was thereafter placed on formal probation for a period of three years on various terms and conditions of probation. During the three-year period, defendant violated his probation several times. Ultimately, in March 2020, following a contested violation of probation hearing, the trial court found true that defendant violated the terms of his probation. Thereafter, pursuant to an agreement, the court reinstated defendant's probation and sentenced him to 365 days in county jail. Defendant appeals from the trial court's judgment finding he violated his probation. Based on our independent review of the record, we find no arguable issue and affirm the judgment.

II

FACTUAL AND PROCEDURAL BACKGROUND

In August 2017, during a verbal argument, defendant choked his wife to the point where she became unconscious. He then threw his wife on the floor and threatened to kill her. Defendant's wife was afraid for her life and believed defendant would kill her. Defendant was subsequently arrested and denied choking or assaulting his wife.

On August 22, 2017, a felony complaint was filed charging defendant with willfully inflicting corporal injury on a spouse (§ 273.5; subd. (a); count 1) and making

_____

[1] All future statutory references are to the Penal Code unless otherwise stated.

2

criminal threats (§ 422, subd. (a); count 2). The complaint also alleged that in the commission of count 1, defendant personally inflicted great bodily injury upon Jane Doe (§ 12022.7, subd. (e)).

On October 23, 2017, defendant pleaded guilty to the added count of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4)). In return, the remaining charges and allegations were dismissed and defendant was placed on formal probation for a period of three years on various terms and conditions of probation.

On April 20, 2018, a petition to revoke defendant's probation was filed. The petition alleged that defendant failed to keep his probation officer informed of his place of residence and that defendant failed to report to his probation officer as directed. On this same day, the trial court revoked defendant's probation and issued a no bail bench warrant for defendant's arrest. Defendant was arrested on the warrant on May 18, 2018.

On June 20, 2018, defendant admitted to violating his probation by failing to report to probation as directed. The trial court thereafter reinstated defendant on probation to expire December 22, 2020, with modified terms and conditions, including serving 270 days in county jail with credit for time served.

On September 10, 2018, another petition to revoke defendant's probation was filed. The petition alleged that defendant failed to (1) cooperate with his probation officer and follow all reasonable directives of his probation officer; (2) keep his probation officer informed of his place of residence; and (3) report to his probation officer as directed. The probation officer noted that this was the second time defendant had

absconded from the probation department, his current whereabouts were unknown, and he had an extensive criminal history. On this same date, the trial court revoked defendant's probation and issued a no bail bench warrant for defendant's arrest. Defendant remained a fugitive until his arrest on the warrant on December 23, 2018.

On February 22, 2019, defendant admitted to violating his probation. In exchange, the trial court suspended imposition of a four-year prison sentence and reinstated defendant on probation to expire June 5, 2021, with modified terms and conditions, including serving 365 days in county jail with credit for time served.

On October 18, 2019, a third petition to revoke defendant's probation was filed, again alleging defendant failed to cooperate with his probation officer, keep his probation officer informed of his place of residence, and report to probation as directed. On this same day, the trial court revoked defendant's probation and issued a no bail bench warrant for defendant's arrest. Defendant remained a fugitive until December 6, 2019.

A formal probation revocation hearing was held on March 13, 2020. At that time, the trial court heard testimony from defendant's probation officer Brenda Campabasso, defendant, and defendant's wife. In pertinent part, Campabasso testified that she was defendant's assigned probation officer, that she had personally met defendant, and that she was familiar with defendant's probation file. Campabasso stated that defendant had reported to the probation department on May 21, 2019, at which time he was directed to report back to probation on August 13, 2019, for an office visit. However, defendant did not appear at the probation department on that date.

On June 6, 2019, Campabasso conducted a home compliance check at an address on West 28th Street provided by defendant. Defendant was not present at the West 28th Street address. While at the address, Campabasso spoke with a man named "Leroy," who stated defendant did not live at the address. Campabasso thereafter contacted defendant to inquire about his place of residence. Defendant informed Campabasso that he lived at the West 28th Street address "in the back part of the residence" with his wife, and that he rented a room from a lady named "LaTanya Bailey." Campabasso also testified that a review of defendant's probation records showed that other probation officers had attempted a home visit at the West 28th Street address on July 31, 2019, and that they had spoken with someone named "Sylvia" at the address who reported defendant had never lived at the address but occasionally visited. Campabasso further testified that defendant reported to probation on August 30, 2019, and at that time was advised to report back to probation on November 13, 2019. Defendant, however, failed to report on November 13, 2019. During an interview with Campabasso after his most recent arrest on the bench warrant, defendant admitted that he did not report to probation as directed.

Defendant testified that when he was placed on probation in February 2019, he met with a probation officer and was directed to report to probation, in person, every 90 days. He did not remember meeting with Campabasso, but recalled meeting with an Asian man who had asked him questions about his residence and that he had informed the man of his address on West 28th Street. Defendant also stated that the Asian probation officer told him to report back in May 2019 and that he reported to probation on that date.

5

When he reported in May 2019, he met with a male probation officer who asked him if he was still living at the same address, if there was anything new going on with him, and who he was living with. He gave him the names, LaTanya Bailey, Victor Bailey, and Bernard Bailey, and also told him he lived in a side house. Defendant explained that the house was one structure with three separate entrances and that he received mail at that address. He also stated that there is one mailbox in the front, that his house is off the kitchen in what used to be the garage, and that access to his house is through the backyard.

Defendant further testified that on May 21, 2019, he saw a probation officer who gave him a card to report on August 13, 2019. On August 13, 2019, he called the probation office and left a message for Campabasso telling her that he had an opportunity to get extra hours at his work study job and promised to report to probation by August 30, 2019. He reported on August 30, 2019, and saw the officer of the day (O.D.). He told the O.D. that he was supposed to report on August 13, 2019, and was not sure if Campabasso received his message. Defendant claimed that the O.D. told him not to worry, it was the month of August, so, "'[y]ou are still good.'" He also explained that when he spoke to Campabasso while in custody and admitted to not reporting, he was referring to the August 13, 2019 report date.

Defendant claimed that he did not know a male named "Leroy" at the address, but acknowledged knowing a person named "Sylvia," who lived at the address in a side house. Defendant believed that Sylvia was covering for him when she told the officers

6

defendant did not live at the address. He also stated that he rented a room from LaTanya Bailey, who owned the property, and did not know why the probation officers did not speak with her but instead spoke with Sylvia.

Defendant's wife testified that in February 2019, she lived at the West 28th Street address and that she had lived there since March 2017. She explained that the house was not divided into apartments or units but is one big house with three separate entrances, that there is no separation between the individual units, and that 15 people, including herself and defendant, lived at that address. On June 6 and July 31, 2019, she was home and did not remember probation visiting. She explained that she lived in the bedroom closest to the front door of the residence and could hear if anyone knocked on the door ,and that she did not live in the back of the house. She also stated that she did not know a person named Leroy that lived at the house.

Following argument, the trial court found defendant in violation of his probation and found true the allegations in the third petition to revoke probation, specifically failure to cooperate, failure to keep probation informed, and failure to report as directed. As to disposition, pursuant to an agreement whereby defendant agreed to waive credits, the trial court reinstated defendant on probation to expire November 22, 2021, and ordered defendant to serve 365 days in county jail with no credit for time served.

On June 1, 2020, defendant filed a timely notice of appeal.

7

III

DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him on appeal. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738, setting forth a statement of the case, a summary of the facts and potential arguable issues, and requesting this court to conduct an independent review of the record.

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders v. California*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON  _____
                                                                J.

I concur:


MILLER  _____
             Acting P. J.

9

[*P. v. SIMS*, E075159]

MENETREZ, J., Dissenting.

The appellate review procedures under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), in which we read the entire record ourselves to search for arguable grounds for reversal, apply "only to a defendant's first appeal as of right." (*People v. Thurman* (2007) 157 Cal.App.4th 36, 45; *People v. Serrano* (2012) 211 Cal.App.4th 496, 498 (*Serrano*); *People v. Cole* (2020) 52 Cal.App.5th 1023, 1032 (*Cole*).) *Wende*/*Anders* review is highly unusual and rooted in the constitutional right to effective assistance of counsel, and courts have repeatedly declined to apply it in other contexts. (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 554-555; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 535; *In re Sade C.* (1996) 13 Cal.4th 952, 959; *People v. Kisling* (2015) 239 Cal.App.4th 288, 290; *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1425; *People v. Taylor* (2008) 160 Cal.App.4th 304, 307-308; *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570; 579.)

Because this appeal concerns a postjudgment proceeding in which there is no constitutional right to effective assistance of counsel, appellant has no right to *Wende*/*Anders* review. "[A]lthough we are not required to conduct such a review, we also are not prohibited from conducting it. [Citations.] We have discretion to read the entire record and look for arguable grounds for reversal. We have that discretion in every appeal, both criminal and civil—we are always allowed to read the whole record, searching for issues and requesting supplemental briefing on anything we find." (*People*

1

*v. Gallo* (Nov. 19, 2020, E074674) __ Cal.App.5th __ [2020 Cal.App. Lexis 1095, *8-*9] (dis. opn. of Menetrez, J.).) But in the absence of a valid case-specific reason for conducting such a review, doing so would constitute a misuse of judicial resources and an abuse of discretion. (*Id.* at pp. *9-*14 (dis. opn. of Menetrez, J.).)

Appellant's counsel filed an opening brief raising no issues, and appellant was notified but did not file a supplemental brief. There is no case-specific reason for us to read the whole record to look for grounds for reversal. We consequently should not affirm but rather should dismiss the appeal as abandoned. (*Serrano*, 211 Cal.App.4th at pp. 503-504; *Cole*, 52 Cal.App.5th at pp. 1039-1040.) I therefore respectfully dissent.

MENETREZ      

J.