Filed 12/10/20  P. v. Banks CA4/2

*See dissenting opinion.*

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E074390 |
| v. | (Super.Ct.No. RIF080665) |
| CLYDE SHIRONE BANKS, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  John D. Molloy, Judge. Affirmed.

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## FACTUAL AND PROCEDURAL HISTORY

A.      PROCEDURAL HISTORY

On February 21, 2001, a second amended information charged defendant and appellant Clyde Shirone Banks and codefendant Jason Latrell Thomas[1] with first degree murder under Penal Code[2] section 187 (count 1) and attempted robbery under sections 664 and 211.  As to both counts, the information also alleged that defendant personally and intentionally discharged a firearm and proximately caused great bodily injury or death to another person under sections 12022.53, subdivision (d), and 1192.7, subdivision (c)(8).  As to count 1, the information further alleged that defendants committed the murder while engaged in the attempted robbery under section 190.2, subdivision (a)(17).

"The jury found defendants guilty as charged, and found the felony murder special circumstance allegation and all firearm enhancement allegations true.  Banks was sentenced to life without the possibility of parole, plus a consecutive term of 25 years to life for the personal discharge enhancement, on count 1." (*People v. Banks* (October 8, 2002, E029239) [nonpub. opn.]; 2002 Cal.App.Unpub.LEXIS 9374, *3.)[3]

---

[1]  Codefendant Thomas is not a party to this appeal.

[2]  All statutory references are to the Penal Code unless otherwise specified.

[3]  Defendant and Thomas both appealed.  On October 8, 2002, we affirmed the judgment in an unpublished opinion in case No. E029239.  (*People v. Banks*, *supra*, 2002 Cal.App.Unpub.LEXIS 9374, *45.)

Almost 17 years later, on September 6, 2019, defendant filed a petition for resentencing under section 1170.95. On December 13, 2019, after a hearing on the motion wherein defendant was represented by counsel, the trial court denied the petition.

On December 23, 2019, defendant filed a timely notice of appeal.

B.     FACTUAL HISTORY[4]

"On April 9, 1998, at 10:00 p.m., Rodney Martin (Martin), then 31 years old, drove to the Hunt Club apartments in Perris with his brother, Troy Petterway (Petterway), then 26 years old. Martin and Petterway drove into a carport area and stepped out of the car. Thomas then approached Petterway on the passenger's side of the car and asked for a cigarette.

"Petterway knew Thomas, thought there might be a fight, and kept his attention on Thomas. Petterway then saw 'two other guys' approach Martin on the driver's side of the car. He identified one of the two other guys as Banks, but could not identify the other.[5] Either Banks or the person standing near him said, 'Break yourself,' which meant, 'This is a robbery.'

"Martin told Banks to 'get out of his face' and swung at him. Banks then pulled a gun out of his jacket and started shooting. Martin said, 'Run,' and Petterway ran. As

_____

[4] The facts are taken from our opinion in the prior appeal in case No. E029239.

[5] "Petterway also told the police that there may have been a fourth person who approached him, with Thomas, on the passenger's side of the car. Petterway identified Thomas and Banks, but could not identify either of the other two persons."

3

Petterway ran, he heard Thomas yell 'Outlaw.' Within minutes, Martin died of multiple gunshot wounds.

"Petterway testified that as he was running from the scene he heard several shots fired, with a pause in between. William Owens (Owens), the maintenance supervisor at the apartments and a former weapons instructor in the Marines, also heard two sets of shots fired, with a pause in between. Owens said that the pause was 'like somebody was changing a magazine.'

"Thomas's brother, Malik Swanigan (Swanigan), testified that he was in an upstairs apartment when he heard shots being fired. He ran out of the apartment and halfway down the staircase. From there, he saw Banks shooting Martin. He then saw Thomas take the gun from Banks and shoot Martin several times. (Fn. omitted.)

"After the shooting, Swanigan and Thomas went to see Swanigan's girlfriend, Nina Burton, in Sun City. Burton told the police that the morning after the shooting she overheard Thomas on the telephone bragging that he had shot Martin.

"Several days after the shooting, Swanigan and Thomas went to visit [Lisa] Rufus in Bellflower. There, Thomas confessed to Rufus that he shot Martin, and made additional statements that incriminated Banks."

## DISCUSSION

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of the case, a summary of the facts, and potential arguable issues, and has requested this

4

court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its search of the record for error: "Did the court err in concluding that Banks failed to establish a prima facie case for relief because his jury found true the murder/robbery special circumstance?"

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

We recognize that in *People v. Cole* (2020) 52 Cal.App.5th 1023, Division Two of the Second Appellate District held "that *Wende*'s constitutional underpinnings do not apply to appeals from the denial of postconviction relief." (*Id*. at p. 1028.) We have "no independent duty to review the record for reasonably arguable issues," and when a defendant fails to file a supplemental brief, "the Court of Appeal *may* dismiss the appeal as abandoned." (*Id*. at p. 1039, italics added.) Recently, in *People v. Flores* (2020) 54 Cal.App.5th 266 (*Flores*), our colleagues in Division Three of the Fourth Appellate District held "that when an appointed counsel files a *Wende* brief in an appeal from a summary denial of a section 1170.95 petition, a Court of Appeal is not required to independently review the entire record, but the court can and should do so in the interests of justice. This is a pure question of law, so our review is de novo." (*Id.* at p. 269.) The *Flores* court went on to reiterate that "while we agree with the primary holding in *Cole*— that we are not required to conduct an independent review of the record because this is not defendant's first appeal as a matter of right—we have found no legal authority that *prohibits* us from doing so in the interests of justice." (*Id.* at p. 273.) We agree with our colleagues in *Flores*.

5

"There are three well-established 'due process' criteria that are helpful to courts when establishing procedures in the interests of justice: 'They are (1) "the private interests at stake," (2) "the government's interests," and (3) "the risk that the procedures used will lead to erroneous decisions." ' " (*Flores*, *supra*, 54 Cal.App.5th at pp. 273-274.)

As noted by the court in *Flores*, "[i]n an appeal from a denial of a section 1170.95 petition, the private interests at stake are the liberty interests of the person who may be in custody and seeking release. [Citation.] The government's interests are the appellate court's interests in making sure there was a correct ruling in the trial court, while balancing fiscal and administrative concerns. [Citation.] And finally, the risk of an erroneous ruling is present if appointed counsel failed to identify a meritorious (reversible) issue on appeal, and the appellate court also failed to identify that issue by failing to conduct an independent review." (*Flores*, *supra*, 54 Cal.App.5th at p. 274.) The court went on to state that "[w]hen we weigh the paramount liberty interests of the petitioner, the modest fiscal and administrative burdens to the courts, and the possible (while presumably low) risk of a petitioner's unlawful incarceration due to an unreviewed meritorious issue on appeal, we lean toward caution. That is, although it is not required under law, we think an appellate court can and should independently review the record on appeal when an indigent defendant's appointed counsel has filed a *Wende* brief in a postjudgment appeal from a summary denial of a section 1170.95 petition (regardless of whether the petitioner has filed a supplemental brief.)" (*Ibid.*)

6

We agree with *Flores* that dismissal is discretionary, and that we can and should independently review the record on appeal in the interests of justice. (*Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 544, fn. 8.)

A.      LEGAL BACKGROUND

"In 2018 the Legislature enacted Senate Bill No. 1437 (2017-2018 Reg. Sess.) . . ., which abolished the natural and probable consequences doctrine. . . . Under section 189, subdivision (e), as amended by Senate Bill No. 1437, a defendant is guilty of felony murder only if he: actually killed the victim; directly aided and abetted or solicited the killing, or otherwise acted with the intent to kill; or 'was a major participant in the underlying felony and acted with reckless indifference to human life.' " [Citations.] The legislation also enacted section 1170.95, which established a procedure for vacating murder convictions for defendants who would no longer be guilty of murder because of the new law and resentencing those who were so convicted." (*People v. Murillo* (2020) 54 Cal.App.5th 160, 166 (*Murillo*).)

"Section 1170.95 allows a defendant serving a sentence for felony murder who would not be guilty of murder because of the new law to petition for resentencing. The statute requires a defendant to submit a petition affirming that he meets three criteria of eligibility: (1) He was charged with murder in a manner 'that allowed the prosecution to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine' [citation]; (2) He 'was convicted of' or pleaded guilty to 'first degree murder or second degree murder' [citation]; and (3) He 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437 [citation]. As described above, those changes eliminated the natural and probable consequences doctrine as a basis for murder liability, and added a requirement for felony murder that a defendant must have

7

been at least a major participant in the underlying felony and have acted with reckless indifference to human life." (*Murillo*, *supra*, 54 Cal.App.5th at p. 166.)

Section 1170.95, subdivision (b), states that the petition must include: a declaration from the petitioner that he or she is eligible for relief under the statute, the superior court's case number and year of conviction, and a statement as to whether the petitioner requests appointment of counsel. (§ 1170.95, subd. (b)(1).) If any of the required information is missing and cannot "readily [be] ascertained by the court, the court may deny the petition without prejudice to the filing of another petition." (§ 1170.95, subd. (b)(2).)

Section 1170.95, subdivision (c), sets forth the trial court's responsibilities once a complete petition has been filed: "The court shall review the petition and determine if the petitioner has made a prima facie showing that the petitioner falls within the provisions of this section. If the petitioner has requested counsel, the court shall appoint counsel to represent the petitioner. The prosecutor shall file and serve a response within 60 days of service of the petition and the petitioner may file and serve a reply within 30 days after the prosecutor response is served. . . . If the petitioner makes a prima facie showing that he or she is entitled to relief, the court shall issue an order to show cause." (§ 1170.95, subd. (c).)

If the court issues an order to show cause, it must hold a hearing to determine whether to vacate the murder conviction. (§ 1170.95, subd. (d).) At that hearing, the prosecution has the burden of proving beyond a reasonable doubt that the petitioner is ineligible for resentencing. (§ 1170.95, subd. (d)(3).) The prosecutor and petitioner "may rely on the record of conviction or offer new or additional evidence to meet their respective burdens." (*Ibid.*)

In short, a section 1170.95 petitioner must first make a prima facie case for relief, and if they are able to do so, the trial court must issue an order to show cause and hold a hearing to determine whether to vacate the murder conviction and recall the sentence. (See, e.g., *People v. Verdugo* (2020) 44 Cal.App.5th 320, 328, review granted Mar. 18, 2020, S260493.) " 'A prima facie showing is one that is sufficient to support the position of the party in question.' " (*People v. Lewis*, *supra*, 43 Cal.App.5th at p. 1137, quoting *Aguilar v. Atlantic Richfield Co*. (2001) 25 Cal.4th 826, 841.)

In this case, the trial court denied defendant's petition at the first stage of prima facie review under section 1170.95, subdivision (c). "A denial at that stage is appropriate only if the record of conviction demonstrates that 'the petitioner is ineligible for relief as a matter of law.' [Citations.] This is a purely legal conclusion, which we review de novo." (*Murillo*, *supra*, 54 Cal.App.5th at p. 167.)

B.     THE TRIAL COURT PROPERLY DENIED DEFENDANT'S PETITION

1.     *THE PROPER VEHICLE TO CHALLENGE A FELONY-MURDER SPECIAL CIRCUMSTANCE IS A HABEAS PETITION*

"To be eligible for resentencing under section 1170.95, [a defendant] must show that he 'could not be convicted of first or second degree murder because of changes to Section[s] 188 or 189 made effective' as a part of Senate Bill No. 1437. [Citation.] Under the newly amended version of section 189, a defendant can be convicted of felony murder only if he was the actual killer; acted with the intent to kill in aiding, abetting, counseling, commanding, inducing, soliciting, requesting, or assisting in first degree murder; or 'was a major participant in the underlying felony and acted with reckless indifference to human life, as described in subdivision (d) of Section 190.2.' [Citation.] These are identical to the circumstances in which a felony-

9

murder special circumstance applies.  [Citation.]  Thus, the jury's special circumstance finding shows as a matter of law that [defendant] could still be convicted of felony murder under the new definition, and prevents [defendant] from making a prima facie case that he is eligible for resentencing."  (*Murillo*, *supra*, 54 Cal.App.5th at p. 167.)

Two recent cases have found that "the proper remedy for challenging a special circumstance finding is by a petition for habeas corpus, not a petition for resentencing under section 1170.95."  (*People v. Galvan* (2020) 52 Cal.App.5th 1134, 1137, 1142 (*Galvan*); *Murillo*, *supra*, 54 Cal.App.5th at p. 167.)  The *Murillo* court stated:  "As we explained in *Galvan*, a defendant subject to a pre-*Banks* and *Clark* special circumstance is ineligible for resentencing under section 1170.95 because of the basis of his claim.  Although [the defendant] asserts that he could not now be convicted of murder, 'the alleged inability to obtain such a conviction is not 'because of changes' made by Senate Bill No. 1437, but because of the clarification of the requirements for the special circumstances finding in *Banks* and *Clark*. Nothing about those requirements changed as a result of Senate Bill No. 1437.  Just as was the case before that law went into effect, the special circumstance applies to defendants who were major participants in an underlying felony and acted with reckless indifference to human life.  If [the defendant] is entitled to relief based on *Banks* and *Clark*, the avenue for such relief is not section 1170.95, but a petition for writ of habeas corpus.' "  (*Murillo*, *supra*, 54 Cal.App.5th at p. 168.)

The *Murillo* court went on to state that "[b]y requiring a defendant to seek relief via habeas corpus, we avoid creating a disparity in which similarly situated defendants' cases are evaluated under different standards based solely on the date of their convictions.  'Defendants convicted after the Supreme Court issued its decisions in *Banks* and *Clark* would be required to

challenge the sufficiency of the evidence of the special circumstance finding on direct appeal, where the People would need only to show that substantial evidence supported that finding. If the judgment is affirmed, generally it would be the law of the case in any proceedings thereafter as to those findings. [Citations.] But where, as here, a defendant was convicted before *Banks* and *Clark*, if the defendant could bring a collateral challenge under section 1170.95, the prosecution would be required to prove the special circumstance beyond a reasonable doubt. [Citation.] Yet nothing in the language of Senate Bill 1437 suggests that the Legislature intended unequal treatment of such similarly situated defendants.' " (*Murillo*, *supra*, 54 Cal.App.5th at pp. 168-169.)

We agree with both *Galvan* and *Murillo* and hold that the proper procedure of challenging a felony-murder special circumstance is a habeas petition.

2. *AS A MATTER OF LAW, THE SPECIAL CIRCUMSTANCES AS DEFINED BY BANKS AND CLARK APPLIES TO DEFENDANT*

Assuming arguendo that defendant can challenge the validity of a felony-murder special circumstance via a petition under section 1170.95, defendant's claim fails because his record of conviction, as a matter of law, establishes that the jury's special circumstance finding is valid under the standard established by *Banks* and *Clark*.

Whether there is sufficient evidence that defendant was a major participant in the robbery who acted with reckless indifference to human life is a question we can decide on appeal. "A [d]efendant's claim that the evidence presented against him failed to support [a] robbery-murder special[-]circumstance [finding made prior to *Banks* and *Clark*] . . . is not a 'routine' claim of insufficient evidence." (*In re Miller* (2017) 14

11

Cal.App.5th 960, 979-980.) The "claim does not require resolution of disputed facts; the facts are a given." (*Id*. at p. 980.)

Section 190.2 sets forth the special circumstances under which murderers and accomplices can be punished by death or life without possibility of parole. One such circumstance is when a defendant is found guilty of first degree murder committed while he was engaged in, or was an accomplice to, the commission or attempted commission of a robbery. (§ 190.2, subd. (a)(17)(A).) However, as explained *post*, a death resulting during the commission of a robbery (or any other felony enumerated in § 189) is insufficient, on its own, to establish a felony-murder special circumstance for those defendants who were not determined to be the actual killer. Such defendants can only be guilty of special-circumstance felony-murder if they aid in the murder with the intent to kill (§ 190.2, subd. (c)), or, lacking intent to kill, aid in the felony "with reckless indifference to human life and as a major participant." (§ 190.2, subd. (d).)

Section 190.2, subdivision (d), was enacted in 1990 to bring state law into conformity with prevailing Eighth Amendment doctrine, as set out in the United States Supreme Court's decision in *Tison v. Arizona* (1987) 481 U.S. 137. (*Banks*, *supra*, 61 Cal.4th at p. 789.) "In *Tison*, two brothers aided an escape by bringing guns into a prison and arming two murderers, one of whom they knew had killed in the course of a previous escape attempt. After the breakout, one of the brothers flagged down a passing car, and both fully participated in kidnapping and robbing the vehicle's occupants. Both then stood by and watched as those people were killed. The brothers made no attempt to assist the victims before, during, or after the shooting, but instead chose to assist the killers in their continuing criminal endeavors.

12

[Citation.]  The Supreme Court held the brothers could be sentenced to death despite the fact they had not actually committed the killings themselves or intended to kill, stating:  '[R]eckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result.  The [brothers'] own personal involvement in the crimes was not minor, but rather, . . . "substantial."  Far from merely sitting in a car away from the actual scene of the murders acting as the getaway driver to a robbery, each . . . was actively involved in every element of the kidnap[p]ing-robbery and was physically present during the entire sequence of criminal activity culminating in the murder[s] . . . and the subsequent flight.  The Tisons' high level of participation in these crimes . . . implicates them in the resulting deaths.' "  (*In re Ramirez* (2019) 32 Cal.App.5th 384, 393-394, quoting *Tison* at pp. 157-158.)

"The *Tison* court pointed to the defendant in *Enmund v. Florida* (1982) 458 U.S.  782, . . . (*Enmund*) as an example of a nonkiller convicted of murder under the felony-murder rule for whom the death penalty was unconstitutionally disproportionate.  Enmund was the driver of the getaway car in an armed robbery of a dwelling whose occupants were killed by Enmund's accomplices when they resisted.  [Citation.]  In deciding the Eighth Amendment to the United State Constitution forbids imposition of the death penalty 'on one such as Enmund' . . . , the high court emphasized that the focus had to be on the culpability of Enmund himself, and not on those who committed the robbery and shot the victims [citation].  'Enmund himself did not kill or attempt to kill; and, . . . the record . . . does not warrant a finding that Enmund had any intention of participating in or facilitating a murder. . . .  [T]hus his culpability is plainly different from that of the robbers who killed; yet the State treated them alike and attributed to Enmund the

13

culpability of those who killed the [victims].  This was impermissible under the Eighth Amendment.' "  (*People v. Ramirez, supra*, 32 Cal.App.5th at p. 394.)

In *Banks*, the California Supreme Court described what is often referred to as the *Tison-Enmund* spectrum.  "At one extreme" are people like Enmund—"the minor actor in an armed robbery, not on the scene, who neither intended to kill nor was found to have had any culpable mental state."  (*Banks, supra*, 61 Cal.4th at p. 800.)  "At the other extreme [are] actual killers and those who attempted or intended to kill."  (*Ibid.*)  Section 190.2, subdivision (d), covers those people who fall "into neither of these neat categories"—people like the Tison brothers, who were major participants in the underlying felony and acted with a reckless indifference to human life.  (*Banks*, at p. 800.)

The California Supreme Court articulated several factors intended to aid in determining whether a defendant falls into this middle category, such that section 190.2, subdivision (d), would apply to them.  "What role did the defendant have in planning the criminal enterprise that led to one or more deaths?  What role did the defendant have in supplying or *using* lethal weapons?  What awareness did the defendant have of particular dangers posed by the nature of the crime, weapons used, or past experience or conduct of the other participants?  Was the defendant *present at the scene* of the killing, in a position to facilitate or *prevent* the actual murder, and did his or her own actions or *inaction* play a particular role in the death?  What did the defendant do after lethal force was used?"  (*Banks, supra*, 61 Cal.4th at p. 803, italics added.)  "No one of these considerations is necessary, nor is any one of them necessarily sufficient."  (*Ibid.*)

The defendant in *Banks*, Lovie Troy Matthews, was convicted of first degree murder with a felony-murder special circumstance based on his having acted as the getaway driver for an armed robbery in which his codefendant Banks and others participated, and in which Banks shot and killed one of the robbery victims while escaping. (*Banks*, *supra*, 61 Cal.4th at pp. 796-797.) Considering Matthews's involvement in the robbery against the factors just enumerated, the Court "placed [him] at the *Enmund* pole of the *Tison-Enmund* spectrum." (*People v. Ramirez*, *supra*, 32 Cal.App.5th at p. 397.) As a result, the Court concluded "the jury's special-circumstance true finding cannot stand." (*Banks*, at p. 811.) Not long after *Banks*, the Court revisited this issue in *Clark*, also concluding the evidence was insufficient to support the defendant's robbery-murder special-circumstance findings. (*Clark*, *supra*, 63 Cal.4th at p. 611.) The defendant in *Clark planned* a burglary of a computer store to occur after the store was closed. According to the plan, his codefendant was to carry out the burglary and carry an unloaded gun. However, his codefendant ended up carrying a gun loaded with one bullet and fired that bullet when he unexpectedly encountered a store employee, killing her. (*Id.* at pp. 612-613.) The Supreme Court concluded there was insufficient evidence Clark acted with reckless indifference to human life because (a) Clark was not physically present when his codefendant killed the employee and was therefore unable to intervene; (b) there was no evidence Clark knew his codefendant was predisposed to be violent; and (c) Clark planned for the robbery to take place after the store closed, and the gun was not supposed to be loaded. (*Id.* at pp. 619-622.) In sum, the court believed there was "nothing in [Clark's] plan that one can point to that elevated the risk to human life beyond those risks inherent in any armed robbery." (*Id.* at p. 623.)

In this case, in contrast to *Banks* and *Miller*, defendant was a willing participant in the violent manner in which the robbery and murder took place. Defendant and his codefendant

approached the two victims, Martin and Petterway. One of them said "Break yourself," which meant, "This is a robbery." When Petterway started to run away, he heard codefendant Thomas yell "Outlaw" and within minutes, Martin died of multiple gunshot wounds. The evidence showed defendant pulled a gun out of his jacket and started shooting; defendant shot the victim numerous times. Thereafter, codefendant took the gun from defendant and shot Martin several more times. At the hearing on the section 1170.95 petition, the People moved to dismiss the petition "because according to the appellate opinion, there was a robbery special circumstance that was found true. CALJIC 8.0.1 was given, and that would have required the jury to find an intent to kill or that the defendant was a major participant acting in reckless indifference." Thereafter, the trial court dismissed defendant's petition. We agree with the trial court; we are not aware of a single case that concludes a defendant who personally committed a robbery, used a gun, and actually shot the victim did not meet the standard in section 190.2, subdivision (d). The defendants who have been able to get their special circumstance findings vacated are those who were not wielding guns themselves and also were not present for the shooting (either because they were acting as getaway drivers or because they were involved in the planning of the crime only). Defendant's conduct is clearly distinguishable. "We are not aware of any case where a court overturned a special circumstance finding in which the defendant was present and bore such a strong responsibility for the victim's death." (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

As the court in *Murillo* recognized, "[i]n *People v. Smith* (2020) 49 Cal.App.5th 85, 95-96 (*Smith*), our colleagues in Division 5 of [the Second District] held that a defendant could challenge a pre-*Banks* and *Clark* special circumstance finding in a petition under section 1170.95. The court also held that it was inappropriate to determine at the first stage of review

16

under section 1170.95 whether the defendant met the standard for a special circumstance under *Banks* and *Clark* because at the final eligibility hearing, a petitioner has the opportunity to introduce new or additional evidence regarding his eligibility for resentencing.  [Citation.]  The court in *Smith* held that, because a trial court cannot know what evidence a petitioner may submit, it cannot at the first stage of review determine that a petitioner was a major participant who acted with reckless indifference to human life."  (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

We agree with *Murillo* "that a petition under section 1170.95 cannot be used to challenge a felony-murder special circumstance finding.  Even if we assume that such a challenge can be asserted in a section 1170.95 petition, we disagree with *Smith* regarding the standard for evaluating the evidence to determine whether a defendant has made a prima facie showing of eligibility under that section.  If as a matter of law the record of conviction shows, as it does here and did in *Smith*, that the defendant was a major participant who acted with reckless indifference to human life, and the defendant does not claim he has new evidence to present, he has not made a prima facie case.  This view is consistent with existing case law construing section 1170.95, including *Lewis*, *supra*, 43 Cal.App.5th 1128, review granted March 18, 2020, S260598 and *Verdugo*, *supra*, 44 Cal.App.5th 320, review granted March 18, 2020, S260493."  (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

Here, like the record in *Murillo*, "the record of conviction establishes as a matter of law that [defendant] was a major participant who acted with reckless indifference to human life, as those terms were clarified in *Banks* and *Clark*, and [defendant] does not claim to have any new evidence on this issue.  Therefore, even if his claim [were] cognizable under section 1170.95, [defendant] was not eligible for relief under that statute."  (*Murillo*, *supra*, 54 Cal.App.5th at p. 173.)

17

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment.  (*Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error.  We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists.  (*Id.* at p. 126; *Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

### DISPOSITION

We affirm the trial court's order denying defendant's petition.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER

J.

I concur:

McKINSTER

Acting P. J.

18

[*P. v. BANKS*, E074390]

MENETREZ, J., Dissenting.

The appellate review procedures under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), in which we read the entire record ourselves to search for arguable grounds for reversal, apply "only to a defendant's first appeal as of right." (*People v. Thurman* (2007) 157 Cal.App.4th 36, 45; *People v. Serrano* (2012) 211 Cal.App.4th 496, 498 (*Serrano*); *People v. Cole* (2020) 52 Cal.App.5th 1023, 1032 (*Cole*).) *Wende*/*Anders* review is highly unusual and rooted in the constitutional right to effective assistance of counsel, and courts have repeatedly declined to apply it in other contexts. (*Pennsylvania v. Finley* (1987) 481 U.S. 551, 554-555; *Conservatorship of Ben C.* (2007) 40 Cal.4th 529, 535; *In re Sade C.* (1996) 13 Cal.4th 952, 959; *People v. Kisling* (2015) 239 Cal.App.4th 288, 290; *People v. Dobson* (2008) 161 Cal.App.4th 1422, 1425; *People v. Taylor* (2008) 160 Cal.App.4th 304, 307-308; *Glen C. v. Superior Court* (2000) 78 Cal.App.4th 570; 579.)

Because this appeal concerns a postjudgment proceeding in which there is no constitutional right to effective assistance of counsel, appellant has no right to *Wende*/*Anders* review. "[A]lthough we are not required to conduct such a review, we also are not prohibited from conducting it. [Citations.] We have discretion to read the entire record and look for arguable grounds for reversal. We have that discretion in every appeal, both criminal and civil—we are always allowed to read the whole record, searching for issues and requesting supplemental briefing on anything we find." (*People v. Gallo* (Nov. 19, 2020, E074674) __ Cal.App.5th __ [2020 Cal.App. Lexis 1095, *8-*9]

1

(dis. opn. of Menetrez, J.).)  But in the absence of a valid case-specific reason for conducting such a review, doing so would constitute a misuse of judicial resources and an abuse of discretion.  (*Id.* at pp. *9-*14 (dis. opn. of Menetrez, J.).)

Appellant's counsel filed an opening brief raising no issues, and appellant was notified but did not file a supplemental brief.  There is no case-specific reason for us to read the whole record to look for grounds for reversal.  We consequently should not affirm but rather should dismiss the appeal as abandoned.  (*Serrano*, 211 Cal.App.4th at pp. 503-504; *Cole*, 52 Cal.App.5th at pp. 1039-1040.)  I therefore respectfully dissent.

MENETREZ       
J.

2